# SEPTEMBER TERM, 1898.

## CHARLES TOWN.

Bank of Berkeley Springs *v.* Green *et al.*

Submitted February 12, 1898—Decided September 11, 1898.

Deed—*Trusts—Cestui Que Trust—Quantity of Estate.*

> G. conveyed by deed of general warranty to V, a tract of land, upon the following trust: "That the party of the second part, hereby agrees and covenants that he will take, hold, and stand seised of the above-described real estate to and for the only, sole and separate use, behoof, and benefit of Mary E Green, wife of the said Charles S. Green, so that the said Charles S. Green will not sell, mortgage, charge, or incumber the same by way of anticipation or otherwise; that the said Mary E. Green shall receive the rents and profits arising from the said property, or such person or persons as the said Mary E. Green shall by her order in writing direct and appoint to receive the same, during the joint lives of the said Chas. S. Green and Mary E. Green, his wife; and upon the decease of the said Chas. S. Green, in case his wife should survive him, then the said Mary E. Green, his wife, shall immediately take and hold the property hereinbefore described, to her and the heirs of herself forever; and upon this further trust and confidence, that the said Mary E. Green may devise and dispose of the above-described property by her last will and testament, or by a paper in the nature of a will, as if she were a *feme sole*, and that she may otherwise dispose of the same by the consent of her trustee, and joining with him and her said husband in a conveyance of the same or any part thereof." *Held,* that said deed conveys to Mary E. Green an equitable estate in fee. (pp. 169, 176).

Appeal from Circuit Court, Morgan County.

Bill in equity by the Bank of Berkeley Springs against Charles S. Green and others. From a decree sustaining a demurrer to the bill, and a judgment dismissing the cause, plaintiff appeals.

*Affirmed.*

W. H. Travers and J. Hammond Siler, for appellant.

Flick, Westenhaver & Baker, for appellees.

McWhorter, Judge:

On the 18th day of May, 1884, Charles S. Green conveyed, by deed of that date, to T. G. Vandike, upon consideration of the use and trust therein created, and the further consideration of one dollar, with general warranty, a certain tract of three acres of land, more or less, lying and being in the new addition to the town of Bath, in Morgan County, with proper description, "in trust, however, and upon this confidence, that the party of the second part hereby agrees and covenants that he will take, hold, and stand seised of the above-described real estate to and for the only, sole, and separate use, behoof, and benefit of Mary E. Green, wife of the said Charles S. Green, so that the said Charles S. Green will not sell, mortgage, charge, or incumber the same by way of anticipation or otherwise; that the said Mary E. Green shall receive the rents and profits arising from the said property, or such other person or persons as the said Mary E. Green shall by her order in writing direct and appoint to receive the. same, during the joint lives of the said Charles S. Green and Mary E. Green, his wife; and upon the decease of the said Chas. S. Green, in case his wife should survive him, then the said Mary E. Green, his wife, shall immediately take and hold the property hereinbefore described, to her and the heirs of herself forever; and upon this further trust and confidence, that the said Mary E. Green may devise and dispose of the above-described property by her last will and testament, or by a paper in the nature of a will, as if she were a *feme sole,* and that she may otherwise dispose of the same by the consent of her trustee, and joining with him and her said husband in the conveyance

of the same or any part thereof,"—which deed was duly acknowledged and recorded.

Mary E. Green died October 3, 1889, intestate, leaving surviving her Nannie L. Green and John V. Green, her children,—the latter an infant,—without having in any way disposed of said property. At the June rules, 1897, the Bank of Berkeley Springs filed its bill in chancery in the clerk's office of the circuit court of Morgan County, suing for itself and such other lien creditors of Charles S. Green as should come in, take part in and share the costs of the suit, alleging that upon the death of Mary E. Green the said real estate, by operation of a resulting trust, became the property of said Charles S. Green, and subject to the liens set out in the bill; that the rents and profits of the land would not satisfy the liens in five years; and praying for an account to ascertain the liens and their priorities, and for sale of the property to pay the same, and for general relief. Defendant Nannie L. Green demurred to the bill, in which plaintiff joined, and the demurrer was argued and submitted, when the court, on the 1st day of September, 1897, decreed as follows: "And the court, having maturely considered all the matters of law arising on such demurrer, is of opinion that on a proper construction of the deed dated May 19, 1884, made by Chas. S. Green to T. G. Vandike, trustee, for the use and benefit of M. E. Green, an office copy of which is filed, as Exhibit No. 2, with the plaintiffs' bill, the said M. E. Green took an equitable estate in fee simple in the property thereby conveyed, which the plaintiffs are seeking by their bill to subject as the property of C. S. Green, and that on the death of said M. E. Green a life estate only, as tenant by the courtesy, vested in the said C. S. Green, her husband, and that the fee vested in the children of M. E. Green, as her heirs at law; and the court being of the opinion, further, that on the death of C. S. Green all interest on his part in the real estate involved in this suit ceased and determined, the court, upon consideration thereof, and for these and other reasons appearing on the face of the plaintiff's bill, doth adjudge, order, and decree that the demurrer to the said bill be, and the same is hereby, sustained. And, the plaintiff not asking leave to amend its bill, it is

further adjudged, ordered, and decreed by the court that
the plaintiff's bill be, and the same is hereby, dismissed,
and that the defendants do recover of the plaintiff their
costs in the prosecution of their defense in this behalf ex-
pended." From which decree plaintiff appealed to this
Court, assigning as error that the court should have over-
ruled the demurrer: "(1) Because, under the provisions of
chapter 71, section 8, of the Code of West Virginia of 1891,
applicable to the case, the deed in question must be con-
strued with reference to the intention of the party grant-
or (C. S. Green), and the said intention is manifestly to
give to the beneficiary, Mary E. Green, (a) the right to
collect the rents and profits of the realty during the joint
lives of herself and her husband; (b) that only in case of
the death of her said husband, she living, should the said
property vest in her and her heirs; (c) that power of dis-
position or alienation was given to her upon condition that
she should devise it, or otherwise dispose of it, during the
joint lives of herself and her husband, by the consent of
her trustee, who, with her husband, should join with her
in such disposition. (2) She not having survived her hus-
band, not having disposed of the property by will or any
paper in the nature thereof, and not having alienated the
said property by the consent of her trustee joining with
her and her husband with conveyance thereof, there was
a resulting trust in favor of the grantor, the said Charles
S. Green, which should be subject to the lien of the judg-
ments set out in the bill. The statute above referred to,
and under which the question in this case arises, is in
*totidem verbis* with the statute of Virginia from which it
has been taken (Code Va. 1873, c. 122, s. 8), and has been
construed by the court of appeals of that state. Professor
Minor (2 Minor, Inst. p. 828) thus refers to this decision:
'In *Humphrey* v. *Foster*, 13 Grat., 653, 656, a noteworthy
construction of this statute occurs. In that case Hum-
phrey, by deed of 23d June, 1820, conveyed to his wife, for-
ever, certain lands, to have and to hold the said lands for
life; and the question was whether by the deed she took an
estate for life, or in fee simple. It is admitted that if the
deed had been to the wife and her heirs, *habendum* to her
for life, the wife would, by the first clause, have taken at

common law a fee simple, and the *habendum* would have been repugnant and void; and it was also admitted that under the statute above cited the wife, notwithstanding the want of words of limitation, would, if the first clause stood alone, have taken a fee simple, but it could be treated as a fee simple in virtue of the statute only, and by the statute the whole deed must be looked to for the purpose of ascertaining whether there is any qualification or limitation upon the generality of the first provision, for such a deed can only convey the fee simple if a less estate be not limited by express words, or as it stands in our present Code, unless "a contrary intention appears by the conveyance," etc. And in the case under consideration a less estate was limited by express words, namely, an estate for the wife's life. It was therefore concluded that the deed conveyed but a life estate to the wife. Of course, where 'a contrary intention [which we contend is the case here] appears by the conveyance,' the same result follows. In such a case a resulting trust ensues as a legal consequence. Professor Minor (2 Minor, Inst. 189) defines such trust, among other instances, 'Where land is conveyed in trusts which fail of taking effect.' Judge Story, with more elaboration, says (1 Story, Eq. Jur. § 1200); 'The same principle applies to cases where the whole estate is conveyed or devised, but for particular objects or purposes, or on particular trusts. In all such cases, if those objects or purposes or trusts, by accident or otherwise, fail and do not take effect, or if they are all accomplished, and do not exhaust the whole property, then a resulting trust will arise for the benefit of the grantor or devisor or his heirs.'"

Section 8, chapter 71, Code, provides: "Where any real estate is conveyed, devised, or granted to any person without any words of limitation, such devise, conveyance, or grant shall be construed to pass the fee simple or the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless a contrary intention shall appear by the will, conveyance, or grant." In the light of this statute we must view the deed in controversy, and to which only can we look, together with the situation of the parties, and the motives inducing the con-

veyance, to arrive at the intention of the grantor when he executed the deed. Chas. S. Green, the grantor, had a wife and two children, for whom he evidently wanted to provide against his own mistakes in business, or the temptations he might have to incumber his property, and thus put it out of his power to give his family such support as he desired them to have. The very language of the first part of the trust created shows the solicitude he had on this point: That the trustee "should take, hold, and stand seised of said real estate, to and·for the only, sole, and separate use, behoof, and benefit of M. E. Green, wife of the said C. S. Green, so that the said C. S. Green will not sell, mortgage, charge, or incumber the same by way of anticipation or otherwise;" thus clearly intending to get the property entirely beyond his reach, as well as that of his creditors. Can it be conceived that the grantor intended to so limit the estate conveyed, by a reversionary or other interest in himself, that at the very time his helpless children might most need this provision for their maintenance and support the property so conveyed should be brought within the grasp of the creditors of the grantor? Both appellant and appellees agree that the intention of the grantor in the conveyance and creation of the trust must be the guiding star in arriving at the true solution of the issue involved, and that, if possible, that intent must be obtained from the deed itself, taken altogether. In Devl. Deeds, § 836, it is said, "The rule is that the intention of the parties is to be ascertained by considering all the provisions of the deed, as well as the situation of the parties, and then to give effect to such intention, if practicable, when not contrary to law." What was the motive which induced the grantor to make this provision for his family? The record does not disclose of what other property, if any, C. S. Green was possessed at the time of the conveyance, or whether he was indebted to any extent at the time; but the presumption is that he was solvent, as no creditors seem to appear to question his voluntary conveyance. So that he is presumed to have made this wise provision for them while he was in condition to do so without fraud of the rights of any. This conveyance is for the only, sole, and separate use, behoof, and

benefit of Mary E. Green, wife of the said Charles S. Green, so that the said C. S. Green will not sell, mortgage, charge, or incumber the same by way of anticipation or otherwise, and providing that said Mary should receive the rents and profits arising therefrom, or should by writing direct and appoint such person or persons to receive the same as she might elect.

Appellant cites in its petition, as well as in its brief, the case of *Humphrey* v. *Foster*, 13 Grat., 653, as applicable to this case. In that case Judge Allen, in delivering the opinion of the court, said: "In the present case we perceive by the *habendum* that an estate for life was expressly limited; and as the object, under the statute, is to ascertain what estate was to be granted by the deed, if a less estate than a fee is limited by express words in any part of the deed it must control and qualify the general words used in the premises." Here the estate for life was expressly limited in language that could not be misunderstood. Point 1 of the syllabus in that case reads: "A deed conveys land to the grantee forever, to hold for life. As the premises would only convey a fee by virtue of the statute, and by the statute the whole deed is to be looked to to ascertain what estate is intended to be passed, the *habendum* in this deed is not void, but only a life estate passed by the deed." In the case at bar there is no clear-cut expression of limitation of estate, as in that case, nor such words nor expression as can reasonably be construed into such limitation. We are told by appellant that "it is manifest that the construction of the statute in both the Humphrey Case and the one now under consideration is precisely the same." In the sense that "the intention collected from the deed, will, or grant, governs and determines the question," this is true; but in the one case we have the intention expressed in unequivocal language, susceptible of but one construction, while in the other a most ingenious and erudite argument is required and made on behalf of appellant to wrench from the provisions of the deed the semblance of an intention on the part of the grantor to limit the estate conveyed. It seems to be a well-settled rule, in case of doubt or ambiguity in a deed, that the same shall be construed most strongly against the grantor. In *Car-*

*rington* v. *Goddin*, 13 Grat. 587, Syl., point 3, it is held: "The deed will be construed more strongly against the grantor, and so as to give it effect, rather than that it should be void for uncertainty." In that case it was doubtful, on the face of the deed, whether one or two parcels of land were intended to be conveyed. So it was accordingly construed to pass both.

Appellant insists that by reason of the law as laid down in point 1 of the syllabus in the case of *Radford* v. *Carwile*, 13 W. Va., 572, the clause in the deed, "that the said Mary E. Green shall receive the rents and profits arising from the said property, or such other person or persons as the said Mary E. Green shall by her order in writing direct and appoint to receive the same, during the joint lives of the said Charles S. Green and Mary E. Green, his wife, and upon the decease of the said Charles S. Green, in case his wife should survive him, then the said Mary E. Green, his wife, shall immediately take and hold the property hereinbefore described, to her and the heirs of herself forever," could have no other meaning or intention "than to be a limitation or restriction upon her power of alienation, since, if there was no such purpose, but the intention was to give her an equitable fee simple, such a title necessarily, and as a legal consequence, carried with it and secured to Mary E. Green the right to the use and enjoyment of the rents and profits during coverture, and it was utterly needless and meaningless to provide specifically for the enjoyment of them by her during the joint lives of herself and husband." It is true that Mary E. Green might have enjoyed the rents and profits under the conveyance without the special provision therein referred to, but it must be remembered that, theretofore, to secure to a married woman in a conveyance the rights of a *feme sole* required great care; and the ordinary attorney, in preparing such a paper, felt much as he would walking on thin ice, and his main object was to get into the instrument sufficient provisions to accomplish his purpose in carrying out the intention of the grantor in making the conveyance. This provision was evidently intended to secure to Mrs. Green the control and enjoyment of the rents and profits during the life of the grantor, which perhaps was unnec-

essary as the law was at the time of the conveyance, but was a precautionary provision which was in harmony with the law.  Formerly the law was that, while the *corpus* of her real estate remained hers notwithstanding coverture, yet the marital rights of the husband entitled him to the rents and profits, unless the property was made her separate estate, in which event the rents and profits were hers; and while at law her contracts were absolutely void, still in equity she might charge, incumber, or otherwise dispose of the rents and profits of her separate estate.   If the intention of the grantor was to limit the estate conveyed to less than an equitable estate in fee to Mrs. Green, it could have been done in a few words, which would have needed no judicial construction.

In *Walke* v. *Moore*, 30 S. E. 374, Syl., point 1, the supreme court of appeals of Virginia held that "a deed conveying land in trust for the sole benefit of the grantor's wife and her children, with power to the trustee, upon request of the wife, in writing, to sell the same, and reserving to the wife the right to dispose of the property by will, conveys to her an equitable estate in fee, to the exclusion of the children."   The trust created in that case was as follows: "To hold all of the said property, real and personal,   *   *   *   for the sole and exclusive benefit of Virginia Baughan [the wife of the grantor] and her children, with power to the said Alvis [trustee], at any time when he shall be so requested by the said Virginia in writing, deeming it for the benefit of the said Virginia and her children, to sell all or any part of the above-conveyed property, real or personal, on such terms as he may deem judicious, and reinvest the proceeds of sale in any other property selected by her, or deemed more profitable to her and her children by him, the said Alvis; reserving to the said Virginia Baughan the right to dispose of all of the said property, both real and personal, by instrument of writing in the nature of a last will and testament."   See, also, *Nixon* v. *Rose*, 12 Grat., 425; *May* v. *Jones*, 20 Grat., 692.   In *Shermer* v. *Shermer's Ex'rs*, 1 Wash., (Va.) 266, John Shermer by will devised to his wife the use and profits of his whole estate, both real and personal, during her natural life, and after that was ended, then the whole of

his estate, exclusive of that already given to his wife, to be equally divided between whomever his wife should think proper to make her heir or heirs, and the testator's brother, Richard. The wife died a few days after the testator, without making any disposition or appointment of her part of the estate. The executors sold the estate, agreeably to the will, and distributed one moiety thereof among the relations of the wife. Suit was brought against the executors and distributees by the son, heir and executor of the brother, Richard, named in the will. President Pendleton, in delivering the opinion of the court, says: "It is contended by the appellant's counsel that Mrs. Shermer was by the will only tenant for life of a moiety, with a power to dispose of the fee, and that, not having executed that power, the estate descends to the heir of the testator. In support of this position several cases have been cited, but they seem to verify the saying of a judge, 'that, in disputes upon wills, cases seldom elucidate the subject, which, depending on the intention of the testator, to be collected from the will, and from the relation and situation of the parties, ought to be decided upon the state and circumstances of each case,' to which I will add that I have generally observed that adjudged cases have been more frequently produced to disappoint than to illustrate the intention, and I am free to own that, when a testator's intention is apparent to me, cases must be strong, uniform, and apply pointedly, before they will prevail to frustrate that intention." And the court held that the executors had properly distributed the funds, and so affirmed the decree. 2 Story, Eq. Jur. § 1393, says: "If there be an express limitation to a married woman for life, with a power to dispose of the same property by will, then her interest will be deemed to be a partial interest, and equivalent to a life estate only, and she cannot dispose of the property absolutely, except in the manner prescribed by the power;" and continues (section 1394): "On the other hand, if the property is expressly given to a married woman, 'to her for her sole and separate use,' without saying 'for life,' and she is further authorized to dispose of the same by will, in such a case the gift will be construed to confer on her the absolute property, and consequently she may dis-

pose of it otherwise than by will; for, the absolute property being given, the power becomes nugatory, and is construed to be nothing more than an anxious expression of the donor that she may have an uncontrolled power of disposing of the property." The deed to Mary E. Green was without saying "for life," and she was thereby authorized to dispose of the property by will, and also by deed, with the consent of the trustee, and joining with him and her husband in a conveyance of the same or any part thereof. In *Milhollen* v. *Rice*, 13 W. Va., 510, JUDGE GREEN, in delivering the opinion of the Court, says: "I conclude, therefore, as stated by Sir William Grant in *Bradley* v. *Westcott*, 13 Ves., 453, and by Chancellor Kent in *Jackson* v. *Robins*, 16 Johns., 588, 'that a devise or gift to A. and such persons as he shall appoint is a fee simple or absolute property in A., without appointment.' " Counsel for appellees very pertinently suggest that the fact that Charles S. Green, the judgment debtor, once owned the property, and then settled it on his wife, is liable to mislead one in the investigation of this question; "that, without his connection in this way with the making of the title to Mrs. Green, no one would for a moment contend that she did not take an equitable fee, or that a trust could in any event result to the grantor. This fact, however, does not affect the law of the case, or change the rules of construction. Let the court regard Charles S. Green, as he really is, in the light merely of an impersonal grantor, and all difficulties will melt away." If the grantor had been other than the husband of Mrs. Green, the estate conveyed would have been precisely the same, and the marital relations of the grantor to Mrs. Green represent the extent of his interest in the property after the conveyance, and at the occurrence of his death his interest ceased in the property, and the bill was properly dismissed. Counsel for appellees insist that the bill was demurrable on other grounds, upon which the bill should have been dismissed, which grounds of demurrer I deem it unnecessary to discuss.

*Affirmed.*