# CHARLESTON.

NAT DEUTSCH AND MICHAEL COHEN v. MORTGAGE SECURITIES COMPANY *et al.*

Submitted May 30, 1924. Decided June 24, 1924.

1. COVENANTS—*Erection of Two Dwelling Houses Held Not Violation of Restrictive Covenant.*

A deed, conveying a city lot in a residential district having a street frontage of 57½ feet and depth of 120 feet, stipulates that the:

"Party of the second part covenants and agrees for itself and assigns that the said lot hereby conveyed

shall never be used for the purpose of constructing flats
or apartments thereon, and that no house shall be built
on said lot nearer to Quarnier 'Walk than the house
now owned and occupied by Oscar Nelson, and that no
dwelling house shall be built upon the said lot except a
one-family house. It is understood that the foregoing
covenants are covenants running with the land, and are
binding on the party of the second part and its assigns."

The erection by the grantee of two one-family dwelling
houses on the premises will not constitute a violation of the
restrictive covenant.  (p. 679).

2.  SAME—*Restrictive Covenants Construed in Favor of Free Use
of Property.*

Restrictive covenants are to be strictly construed against
the person seeking to enforce them, and all doubt must be
resolved in favor of natural rights and a free use of property,
and against restrictions.  (p. 681).

McGINNIS, JUDGE, absent.

Case certified from Circuit Court, Kanawha County.

Suit by Nat Deutsch and another against the Mortgage
Securities Company, and others.  The demurrer to a, motion
to dissolve a temporary injunction was overruled, and the
case certified..

                                                *Reversed.*

*Koontz, Hurlbutt & Revercomb,* for Oscar Nelson, nominal
defendant but plaintiff in fact.

*Poffenbarger, Blue & Dayton,* for defendant Mortgage Se-
curities Co.

LITZ, JUDGE:

Plaintiffs, Nat Deutsch and Michael Cohen, filed their bill
in the circuit court of Kanawha county, October 23d, 1923,
against the defendants Mortgage Securities Company, a cor-
poration, Oscar Nelson, Isaac Loewenstein, and N. S. Stark,
Building Inspector of the City of Charleston, praying that
the defendant, Mortgage Securities Company, be enjoined,
restrained and inhibited from erecting on a certain lot of
land, hereinafter described, situated in the city of Charleston,
more than one one-family dwelling house, and seeking to
restrain and enjoin said N. S. Stark, as Building Inspector

of the City of Charleston, from issuing a permit to the said Mortgage Securities Company for the erection of more than one one-family dwelling house upon said lot, or if such permit was already issued, asking that said Stark may be compelled by mandatory injunction to cancel and rescind it. A temporary prohibitory injunction was thereupon awarded against the defendants, Mortgage Securities Company, and N. S. Stark, Building Inspector of the City of Charleston, as prayed for in the bill.

The bill alleges that the plaintiffs, by deed dated January 16th, 1923, conveyed to the Mortgage Securities Company a lot of land situated on the northerly side of Virginia street, between Ruffner Avenue and Elizabeth street, in the city of Charleston, described as follows:

> "BEGINNING at an iron pin at the intersection of the northerly side of Virginia street and westerly side of Quarrier Walk, thence in a northerly direction with the western line of 'Quarrier Walk a distance of 120 feet to a stake; thence running in the direction of Ruffner Avenue and parallel with Virginia street a distance of 57 feet and 6 inches, more or less, to a common line dividing lots T. and U. of the Joel Ruffner partition; thence with the said common line and in a southerly direction a distance of 120 feet to the line of Virginia street; thence with Virginia street and up the same a distance of 57 feet and 6 inches, more or less, to the place of BEGINNING."

Said deed to the Mortgage Securities Company contained the following restrictive covenant:

> "Party of the second part (grantee), covenants and agrees for itself and assigns that the said lot hereby conveyed shall never be used for the purpose of constructing flats or apartments thereon, and that no house shall be built on said lot nearer to Quarrier Walk than the house now owned and occupied by Oscar Nelson, and that no dwelling house shall be built upon the said lot except a one-family house. It is understood that the foregoing covenants are covenants running with the land, and are binding on the party of the second part and its assigns."

Plaintiffs Deutsch and Cohen acquired title to the lot by deed of November 20th, 1922, from Isaac Loewenstein and wife, it having been conveyed to Loewenstein by Oscar Nelson, by deed dated November 20th, 1922. The bill alleges that a similar restrictive covenant was contained in each of said deeds.

It is further alleged that the Mortgage Securities Company is about to commence the construction of two "one-family" dwelling houses on the said parcel of land; and that the erection of more than one one-family dwelling house thereon will constitute a violation of the said restrictive covenant.

After the granting of the temporary injunction, the defendant Mortgage Securities Company filed its demurrer in writing, setting forth, among other grounds, that the restrictive covenant does not forbid the erection of two one-family dwelling houses; and moved to dissolve the injunction on the ground that the bill is insufficient in law. The demurrer and motion to dissolve having been overruled, the case was certified to this Court on the sufficiency of the bill, under Section 1, Chapter 135, Code.

Upon the theory that the indefinite article "a" means "one", the plaintiffs contend that the words, "a one-family house" as used in the covenant create a *numerical* limitation, confining the number of residence structures to be build on the lot to *one* one-family house. On the other hand, defendant Mortgage Securities Company insists that such is not the true intention or meaning of the covenant and that the words "a one-family house" are merely descriptive of the generic character or quality of the residence structures which may be erected; and that the article "a" is used only for the purpose of euphony in the grammatical construction of the sentence, and not as a word of numerical limitation. In other words, no dwelling house should be constructed which may be designed for the use of more than one family. The plaintiffs say that their construction of the covenant is borne out by the facts and circumstances surrounding the execution of the deeds as well as by the language employed therein. In this connection it is pointed out that Nelson, the original grantor, owned and occupied a valuable

residence on an adjoining lot, within a neighborhood of attractive homes; and that the purpose of the covenant was to preserve a high standard of buildings in the vicinity as a residential district. But the covenant does not restrict the use of the lot to residence purposes. There is no prohibition against the erection of a public garage or other commercial building, which certainly would be more undesirable than two separate dwelling houses of modern design and pleasing to the eye; nor is there any requirement as to the class of residence to be constructed, whether it shall be a mansion or a mere shack. Therefore we are constrained to think that the covenant seeks to prevent primarily the construction of flat or apartment buildings which, on a lot of that size, might house numerous families in close proximity to the home of the defendant Nelson. If it was intended to limit the use of the lot for residential purposes to one one-family house, then the express restriction against the construction of flats or apartments was unnecessary and, therefore, presumptively would not have been inserted.

Can it be said that it was the specific intent of the grantors to bind the grantees by this covenant to build no more than one one-family dwelling, in furtherance of a desire, as claimed by plaintiffs' counsel, that the high class residential character of the neighborhood can only be preserved by the building of one dwelling on the lot, in view of the fact that the covenant does not attempt to restrain the construction of buildings to be used for church, school, mercantile, manufacturing or other commercial purposes, nor require the erection of a high class residence? It is reasonable to assume that had such been the intention, the covenant would have contained these provisions. "Where the character of buildings prohibited is specified in detail, buildings of any kind not expressly excluded may be erected." 18 C. J. p. 388. It is not alleged in the bill that the building of the two houses contemplated will mar the appearance or affect the value of other premises in the neighborhood as residential properties, nor that two separate one-family residences in any sense constitute apartment, or flats.

In the discovery of the intent of the covenant there are

certain accepted principles of construction to be observed. One is that words used are to be taken in their ordinary and popular sense, unless they have acquired a peculiar or special meaning in the particular relation in which they appear, or in respect to the particular subject-matter, or unless it appears from the context that the parties intended to use them in a different sense. Another is that if the language of a restrictive covenant, when read in the light which the context and surrounding circumstances throw upon it, remains of doubtful meaning, it will be construed against rather than in favor of the covenant. *Easterbrook v. Hebrew Ladies etc.*, 85 Conn. 289, 82 Atl. 561, 41 L. R. A. (N. S.) 615.

The indefinite article ''a'' may some times mean one, where only one is intended, or it may mean one of a number, depending upon the context. *State of Arkansas* v. *Kinsworthy*, 60 Ark. 343, 28 L. R. A. 153. In our view of the covenant, read as a whole, the words, ''a one family dwelling house'' do not mean that only one dwelling house may be built upon the lot; but on the contrary, the phrase is merely descriptive of the type or character of dwelling house or houses which may be constructed. The restriction plainly is aimed at the exclusion of apartment or flat buildings.

But if there be doubt, the construction favorable to the grantee must be adopted. *Chapman* v. *Mill Creek Coal Co.*, 54 W. Va. 193, 46 S. E. 262; *Williams* v. *South Penn Oil Co.*, 52 W. Va., 181, 43 S. E. 214; *Turk* v. *Skiles*, 45 W. Va. 84, 30 S. E. 234; *Allen* v. *Yeater*, 17 W. Va. 128; *Bank* v. *Green*, 45 W. Va. 168, 31 S. E. 260; *Easterbrook* v. *Hebrew Ladies, etc., supra.*

Another rule of peculiar application is well stated in *Kitchen* v. *Hawley*, 150 Mo. App. 497, 131 S. W. 142:

> ''The law as a rule favors the free and untrammeled use of real property. Restrictions of the fee in conveyances are therefore regarded unfavorably and strictly construed. Doubt in such restrictions are to be resolved in favor of the grantee in the deed to the end of free use.''

Restrictive covenants are to be strictly construed against

the person seeking to enforce them, and all doubt must be resolved in favor of natural rights and a free use of property, and against restrictions. 18 C. J. 387, 385, and cases cited; *Cole* v. *Seamonds,* 87 W. Va. 20; *Robinson* v. *Edgell,* 57 W. Va. 157.

Whether the restriction contended for by the plaintiffs, if clearly expressed, would be invalid for condemning to non-use an unreasonable portion of the property, we need not decide. The situation in this respect, however, weighs strongly against the plaintiffs' interpretation of the covenant.

In accordance with these principles, the decree of the circuit court will be reversed, the injunction dissolved, and the demurrer to the bill sustained.

*Reversed.*