STATE OF WEST VIRGINIA *ex rel.*
E. M. WELLS AND LUCY I. WELLS

*v.*

THE CITY OF DUNBAR, a Municipal
Corporation, and D. L. SALISBURY, Mayor

(No. 10813)

Submitted September 26, 1956. Decided December 11, 1956.

*Donald L. Schaffer,* for plaintiffs in error.

*S. L. Flournoy, B. J. Pettigrew, Jr.,* for defendants in error.

GIVEN, JUDGE:

Relators, E. M. Wells and Lucy I. Wells, owners in fee simple of Lot K of the Houston Subdivision, in the City of South Charleston, instituted an original proceeding in mandamus in the Circuit Court of Kanawha County, praying that a peremptory writ be awarded requiring defendants, The City of Dunbar and D. L. Salisbury, Mayor, to prosecute an action in eminent domain for the purpose of ascertaining just compensation owing relators for the taking and damaging of Lot K, in the construction and maintenance of a toll bridge by the City of Dunbar, across the Kanawha River, from Dunbar to South Charleston. An amended and supplemental petition was later filed. A demurrer to the amended petition was over-ruled by the circuit court and an order entered by that court awarding the writ as prayed for. This Court grant-ed a writ of error to the order of the circuit court grant-ing the peremptory writ.

Lot K, owned by relators, adjoins Lot L of the same subdivision. The toll bridge was constructed over Lot L. No part of the bridge is on or touches the lot of relators. The City of Dunbar, long before the commencement of the present proceeding, instituted a proceeding for the purpose of condemning Lot L. During the pendency of that proceeding, the city acquired title to Lot L by virtue of a deed therefor from the owners thereof, and the pro-ceeding instituted for the purpose of condemning the lot was dismissed. The amended petition alleges that Lot L, and all other lots of the named subdivision, are subject to certain covenants running with the land, created by the following language contained in various deeds: "This conveyance is made with the following conditions, limita-tions, agreements and restrictions, to-wit:

"The said party of the second part agrees that he will not lease, rent or convey the said property, or any part thereof, to any person or persons of African descent in any degree whatsoever; that he will use said property exclusively for residence purposes and not conduct there-

on any business, and that he will not erect thereon or maintain any bill board or other advertising device; that he will not erect thereon any other building or buildings except a garage or garages; that such residence shall front on said driveway along the said right of way of said street car line * * *".

The precise contention of relators is that the covenants binding owners of lots in the subdivision to use the "property exclusively for residence purposes and not conduct thereon any business" constitute in such lot owners vested rights, a "sort of equitable appendix" or "equitable servitudes", which can not be taken, destroyed or damaged without payment of just compensation; and that the construction of the toll bridge by the City of Dunbar constituted a taking or damaging of such rights.

Before the commencement of the construction of the bridge, relators had constructed on Lot K, owned by them, a large, two story, single family dwelling. The relators alleged, in the amended petition, "That both in the process of the construction and erection of said bridge and driving piles for said piers, as well as the use of said bridge, petitioners' house was and is violently shaken and severely jarred from vibrations therefrom, resulting in large cracks in the masonry basement walls of said dwelling house, in the side walls, chimney, hearth and interior plaster, and many of such cracks occurred long after the driving of said piles, all causing substantial damage to said premises, resulting in petitioners' said home being rendered undesirable for occupancy and because thereof the market value has materially declined and decreased."

The amended petition charges that the bridge is "particularly obnoxious and damaging" to the property owned by relators, that the property is greatly reduced in value, and that their "property has been damaged and essentially taken and confiscated in an arbitrary and unconstitutional manner without due process of law, all in defiance of one of the basic tenents of eminent domain,

i.e., that private property shall not be taken or damaged without due compensation therefor."

Defendants filed an answer denying any violation of the restrictive covenants, and any taking or damaging by them of the property of relators. They also filed a special plea to the amended petition of relators, alleging, in effect, that damages, if any, suffered by relators, occurred more than two years prior to the institution of an action therefor, and that "Any claim for damages to the property of said petitioners allegedly resulting from the driving of piles is barred by the Statute of Limitations applicable to such claims".

Two principal questions are argued: (1) Do restrictive covenants, of the nature of the covenants here alleged to have been violated, constitute such property rights in the owners of lots in a subdivision for which just compensation must be paid by a governmental agency when one of such lots is acquired for governmental purposes? (2) Was the construction of the bridge by the City of Dunbar, or the maintenance thereof, a violation of any covenant created by the pertinent language contained in the conveyances of lots within the subdivision, quoted above?

Before considering either of the controlling questions, we notice a difference in the positions of the litigants with reference to whether the City of Dunbar, in the construction of the toll bridge, was acting in a proprietary or governmental capacity. If acting in a proprietary capacity, relators would have available adequate remedies at law, making mandamus inappropriate. See *Ward* v. *County Court of Raleigh County*, 141 W. Va. 730, 93 S. E. 2d 44. In cases like *Hardy and Deitz* v. *Simpson*, 118 W. Va. 440, 190 S. E. 680, 191 S. E. 47, it is pointed out that under the Constitution, suit can not be maintained against the State because of the immunity of the State, and that for the reason no other available remedy exists, mandamus will lie against a governmental agency in such cases as the instant one. The reasoning has no applica-

tion where a city may be sued in its proprietary capacity. It seems clear, however, that the City of Dunbar was acting in its governmental capacity in the construction of the bridge. The bridge constitutes part of a public way, leading from the City of Dunbar to a state highway and must be presumed necessary for convenient or necessary travel by the public to and from that city. See *State v. O'Brien*, 140 W. Va. 114, 82 S. E. 2d 903; *State ex rel. Knight v. Hanway, Mayor*, 136 W. Va. 219, 67 S. E. 2d 1; *Cavender v. City of Charleston*, 62 W. Va. 654, 59 S. E. 732. In view of the holdings in such cases, it can hardly be questioned that the construction and maintenance of roads, streets and ways over which the public must travel constitute governmental functions. Few, if any, functions imposed by law on municipalities are more exacting, or more beneficial to the public, than adequate maintenance of public ways.

In *Deutsch and Cohen v. Mortgage Securities Co.*, 96 W. Va. 676, 123 S. E. 793, this Court held: "2. Restrictive covenants are to be strictly construed against the person seeking to enforce them, and all doubt must be resolved in favor of natural rights and a free use of property, and against restrictions." See *Neekamp v. Huntington Chamber of Commerce*, 99 W. Va. 388, 129 S. E. 314.

In *West Virginia Transportation Co. v. Ohio River Pipe Line Co.*, 22 W. Va. 600, this Court held: "4. Whenever the Legislature by statute-law has authorized any person or corporation to condemn the lands of others in order to carry on its business, the courts will regard this as a legislative declaration, that this character of business is such, as that the public has so great and direct an interest in, that the courts must hold it as contrary to public policy to permit any restriction of it by private contract."

In *City of Houston v. Wynne*, 279 S. W. 916, the Court of Civil Appeals of Texas, First District, disposed of a similar question in this language: "We have reached the conclusion that the contention of appellees cannot be

sustained, but, on the contrary, that it should be held that appellees had and owned no such rights in lots 4 and 5, as they claim, as against the right of the city to take them under its right of eminent domain for a public fire station. Before and at the time the covenants were entered into by which the appellees and all other lot owners in said addition and their vendor were bound, the statutes of our state empowered the city by condemnation suits against the owner of land to take so much thereof as it, in good faith, deemed necessary for the erection of a public fire station or other public buildings. All such contracting parties were charged with knowledge of such law, and hence it must be assumed, we think, that all such parties contracted understanding that the restrictions entered into between them, which were binding as between themselves and all private parties, did in no manner affect the rights of the city to take such lots as it needed for a public fire station, by virtue of the condemnation statutes. In other words, while it is true that plaintiffs purchased their lots subject to the restrictions mentioned in the deeds by which they and other purchasers of lots in said addition, obtained the negative easement mentioned in their favor, which added materially to the value of their lots for residential purposes, yet those restrictions in no manner militated against the power of authority of the city to take property within the addition for proper public use, although such taking and use might damage lots purchased by them for residential purposes." Writ of error was refused by the Supreme Court of Texas, 115 Texas 255, 281 S. W. 544, for the reason that "Restrictive covenants in dedication of an addition to a city, and in deeds thereto, could not limit or affect police power of state, acting through city, to condemn property for fire protective puposes."

In *Doan* v. *Cleveland Short Line Ry. Co.*, 92 Ohio St. 461, 112 N. E. 505, the Supreme Court of Ohio held: "1. Where an allotter adopts a plan for the improvement of his allotment whereby the use of the lots is restricted exclusively for residence purposes, such restriction cannot be construed as applying to the state or any of its

agencies vested with the right of eminent domain in the use of the lots for public purposes. 2. Where a company or any agency of the state vested with the right of eminent domain has acquired lots in such an allotment and is using the same for public purposes, no claim for damages arises in favor of the owners of the other lots on account of such use." The holding was approved in *Norfolk & Western Ry. Co.* v. *Gale,* 119 Ohio St. 110, 162 N. E. 385, and certiorari was denied, 278 U. S. 571, 73 L. ed. 512, 49 S. Ct. 93. See *Sackett* v. *Los Angeles City School Dist.,* 118 Cal. App. 254, 5 P. 2d 23; *Board of Public Instruction* v. *Town of Bay Harbor Islands,_____ Fla. _____,* 81 S. 2d 637; *Herr* v. *Board of Education of Newark,* 82 N.J.L. 610, 83 A. 173; *Application of Board of Education,* 20 N. J. Super. 272, 89 A. 2d 720; *Moses* v. *Hazen,* 69 F. 2d 842; *United States* v. *Certain Lands,* 112 F. 622. See also *Anderson* v. *Lynch,* 188 Ga. 154, 3 S. E. 2d 85, 122 A.L.R. 1456, where numerous other cases are cited.

We find ourselves in accord with the view that covenants of the nature of those here involved should not be so construed or applied as to require the government, or one of its agencies, in the taking or acquiring of private property for a governmental use, to respond in damages either on the theory of a taking of a vested right, or for breach of such a covenant. To hold otherwise would enable those having title to real estate often to greatly inconvenience and, perhaps, defeat the proper and orderly exercise by the government of the right of eminent domain, guaranteed to it by the Constitution, and absolutely necessary for the operation of the government in a manner best for the interests of all its citizens. No few citizens should be permitted to so contract as to destroy, or make prohibitive to the government, the right to acquire property for necessary governmental purposes. As pointed out in the cited cases, those who enter into such covenants do so with the knowledge that the government has the absolute right to acquire lands for governmental purposes, and they can not be presumed to have intended an interference with such right.

The precise question involved has not been previously determined by this Court. Admittedly, the holding may in some cases cause injury to those having the benefits of such covenants, but we think such injuries are *damnum absque injuria*. Such damages, in most cases at least, would not be damages done directly to the property of claimants, but would amount only to a theoretical reduction in value. In most cases, at least, such damages would be problematical, requiring daring speculation as to the amount thereof. Also, admittedly, there exists a strong, well reasoned, line of cases holding *contra*. The *contra* view is well stated in *Meagher* v. *Appalachian Electric Power Co.*, 195 Va. 138, 77 S. E. 2d 461, where many authorities of that view are cited. It may be pointed out, however, that many of the cases cited consider the question as it relates to public service corporations, as distinguished from a government or a governmental agent. We need not here, and the holding does not, determine the question as it relates to a public service corporation, that question not being here involved.

The holding as to the effect of such restrictive covenants as against a government or governmental agent renders unnecessary any determination of the question whether, assuming the government to be liable for damages for a violation of such a covenant, the construction of the bridge by the City of Dunbar constituted a violation of the covenants here involved. See, however, *Neekamp* v. *Huntington Chamber of Commerce*, 99 W. Va. 388, 129 S. E. 314.

From the allegations of the amended petition quoted above, it appears that relators seek the peremptory writ to require the prosecution of an action in eminent domain for recovery of damages done to their property, both because of the taking and because of the manner in which the construction of the bridge was done. Our holding, to the effect that there can be no recovery because of the taking, or for damages resulting from the taking, does not preclude the landowners from claiming damages resulting from some other cause, negligent con-

struction of the bridge, for example. Such other damages, however, are not recoverable in a proceeding in eminent domain. In such a proceeding, only damages resulting from the taking, including damages naturally resulting from the construction or operation of the improvement, may be recovered, the rule being that damages recoverable in such a proceeding must relate to the time of the taking. See *Strouds Creek and Muddlety Railroad Co.* v. *Herold*, 131 W. Va. 45, 45 S. E. 2d 513; *State ex rel. Quick* v. *Bailey*, 128 W. Va. 123, 35 S. E. 2d 735; *Riggs* v. *State Road Commission*, 120 W. Va. 298, 197 S. E. 813; *Hardy and Deitz* v. *Simpson*, 118 W. Va. 440, 190 S. E. 680, 191 S. E. 47.

It necessarily follows that the relators are not entitled to the peremptory writ prayed for, and that the judgment of the circuit court complained of must be reversed.

*Reversed.*