William R Brennan, Jr., J.
Plaintiff in this action under article 15 of the Real Property Law moves for summary judgment barring the defendants from asserting any claim that certain restrictive covenants prohibit the erection and maintenance of one private dwelling on each of two adjoining plots of real property located within the Incorporated Village of Garden City. Defendants counterclaim for an injunction against the erection of any structures other than one dwelling on the entire combined plots.
Plaintiff acquired a parcel (herein referred to as Parcel X) in Garden City on December 18, 1961. Parcel X has a frontage of 180.22 feet on Eleventh Street, this being the northerly boundary of the parcel, and easterly and westerly lines of 186.20 feet and 167.11 feet respectively. It has an area of about 30,000 square feet. The plaintiff has a conditional contract to purchase a 3,000-square-foot parcel (herein referred to as Parcel T) having a maximum width of 20 feet with no frontage on Eleventh Street, immediately adjoining Parcel X on its westerly side. The plaintiff proposes to divide combined parcels X and Y into two plots of approximately equal area with frontages of 90 and 90.22 feet on Eleventh Street and to build a house on each such new plot, if he is not prevented from doing so by the covenant to be construed.
A preliminary issue has been raised as to the capacity of the plaintiff to maintain this action. It is easily disposed of. Both as owner of the main plot and contract vendee of the smaller area, plaintiff has an interest in real property under section 500 *1056 of the Real Property Law sufficient to sustain an action to quiet title (Karp v. Twenty-Three Thirty Ryer Corp., 185 Misc 440, affd. 270 App. Div. 758).
Parcels X and Y are part of lands conveyed by the defendant Garden City Company to one Mellen in 1904 by a deed which contained the following covenants: “ First: That the said premises shall not, nor shall any part thereof, be used for any commercial or manufacturing trade or business or purpose or for any factory, shop, hotel, livery or boarding stable, lodging, tenement, boarding or apartment house, school, seminary, hospital, or other institution; and that no building or structure except a private dwelling house or a part thereof and the out-buildings connected therewith shall at any time be erected thereon; and that no structure at any time thereon shall be used hereafter for any purpose other than as a private dwelling house, except the necessary and proper stables and out-buildings connected or designed for use in connection with such dwelling house; but nothing herein contained shall be construed to prohibit the owner or tenant of any building on said land actually occupied by him or her primarily as a dwelling house, from pursuing or teaching the liberal arts, sciences or professions, or from taking at any one time four or any less number of persons to board or lodge.”
It is plaintiff’s contention that the above-quoted language merely limits the character of use of the property and not the number of structures, while defendants read the same language as restricting both the character of use and the number of structures.
The first question presented, then, is whether upon this record there is any material question of fact requiring a trial. We find that there is not. To defeat a motion for summary judgment, it is incumbent upon defendants to show evidentiary facts rather than surmise, conjecture oSuspicion. (Shapiro v. Health Ins. Plan, 7 N Y 2d 56, 64; Stagg Tool & Die Corp. v. Weisman, 12 A D 2d 99, 103.) The affidavits in opposition point to no evidentiary facts other than those contained in deeds covering parcels of land in the immediate vicinity. These deeds have been submitted to the court on this motion after an opportunity to review them was afforded to defendants’ attorneys. They form a part of the record in this case. If, as defendants argue, the ultimate question presented is not necessarily limited to the precise language of the covenant, but extends also to the intention of the grantor in inserting the covenant, this intention can be gathered fully from the maps, exhibits and deeds which are before the court on the motion. It is difficult, if not impossible, to conceive of any additional evidence bearing upon such inten *1057 ti on which could have survived the 58-year period since the covenant was written, which would not be clearly self-serving or argumentative, and which would bo admissible at a trial. Certainly, the existence of such evidence is not even suggested by the defendants. The court realizes that summary judgment is the procedural equivalent of a trial (Falk v. Goodman, 7 N Y 2d 87). The court also realizes that a trial court could have no more or no less before it than has been submitted on this motion, and concludes that this is a proper case for summary judgment.
The question of interpretation of covenants was discussed in Kitching v. Brown (180 N. Y. 414, 427) and in that case the court stated: ‘ ‘ The primary rule of interpretation of such covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met.”
A reading of the entire covenant here to be interpreted, rather than an isolated clause thereof, convinces the court that no numerical limitation was intended. It is obvious that had such a limitation been intended, the word “ one ” could have been used rather than the indefinite article “ a ”. It is also apparent that the entire thrust of the covenant is aimed at the type of use. Moreover, the accessory uses permitted at the end of the covenant are confined not to “ the ” building, which would have been the expected language had the numerical limitation been assumed, but to “ any building * * * occupied * * * as a dwelling house,” language plainly admitting of the possibility that more than one such structure was contemplated. Thus, from the four corners of the instrument itself, there would appear to be no numerical limitation intended. Similar language was construed as imposing no numerical limitation in Deutsch v. Mortgage Securities Co. (96 W. Va. 676) which the court considers a persuasive, while not controlling, authority. (See, also, 4 Warren’s Weed, New York Law of Real Property [4th ed.], p. 78; Donegan v. Boylan, 199 N. Y. S. 2d 979, affd. 13 A D 2d 979.)
If, however, the isolated use of the indefinite article “ a ” in the covenant can, in and of itself, be considered as creating an ambiguity, where, absent the indefinite article, no ambiguity could possibly exist, a reading of the covenants in the other deeds clearly negates any intention to impose a numerical limitation. In many of those deeds language substantially similar to the language of the covenant here involved was combined with another covenant clearly and unequivocally limiting the number *1058 of structures to be erected. If such language were sufficient in itself to impose the numerical limitation, then there would have been no need for the additional covenant. Moreover, the deeds themselves demonstrate the entire pattern of development of the area, and the omission in the deed here construed of the standard, unequivocal covenant restricting the number of structures is fully consistent with such development.
In 1903 Mr. Mellen was the grantee of a parcel 150 feet by 250 feet on the north side of Tenth Street. This deed specifically limited construction to one dwelling house. In 1904 the same Mr. Mellen was the grantee of another parcel which gave him an additional 75-foot frontage on the north -side of Tenth Street, west of his previous acquisition and to a depth equal to the depth of his original plot, plus an area of some 30,600- sq. ft. running from the north of his newly extended plot all the way through to Eleventh Street. It is this deed which contains the covenant here construed. In this context of development the exact language of the covenant becomes important. The exception to the prohibition against building was “ a private dwelling house or a part thereof ” (emphasis supplied), language which would, if defendants’ contention were accepted, prohibit the erection of even one house on the entire plot presently owned by plaintiff if any part of Mellen’s house had extended upon any part of the additional 75 feet by 250 feet plot to the west of his original acquisition. Such a construction would torture the language to extract a meaning never intended.
Finally, it is well established that restrictive covenants are to be construed strictly against the party seeking to enforce them. (Buffalo Academy of the Sacred Heart v. Boehm Bros., 267 N. Y. 242, 249.) If capable of more than one interpretation, the less restrictive will be adopted. (Premium Point Park Assn. v. Polar Bar, 306 N. Y. 507, 512.)
The court adopts the less restrictive interpretation and summary judgment is granted to the plaintiff.