[L. A. No. 7724. In Bank.—December 31, 1925.]

JAMES R. MARTIN et al., Appellants, v. LOUISA HOLM, Executrix, etc., et al., Respondents.

[1] BUILDING RESTRICTIONS—ACTION TO ESTABLISH—EVIDENCE.—In an action to establish and impose a general plan of building restrictions upon certain lots owned in fee by the defendants, who are the children, and heirs and grantees, of the original owners of a subdivided tract of land, the trial court properly sustains the defendants' objections to an attempt by plaintiffs to show that when the tract was subdivided and the lots were placed on sale, maps and literature were given to prospective purchasers, and to those who bought lots, which contained information concerning the character of the purported restrictions.

[2] ID.—INTENT OF GRANTOR—BELIEF OF GRANTEE—JOINT INTENT.—The facts that the owners of a tract of land may have in mind a general plan of building restrictions affecting the entire tract and that they lead grantees to believe that the restrictions contained in their respective deeds are executed as part of a general scheme are not sufficient to create such restrictions upon the entire tract, but it is the joint intent of said owners and their grantees, and as between said owners and their grantees the deeds between them constitute the final and exclusive memorial of whatever intention may have existed.

[3] ID.—COVENANTS RUNNING WITH LAND—PARTIES—EVIDENCE—PERSONAL COVENANTS.—In this action to establish and impose a general plan of building restrictions upon certain lots owned in fee by the defendants, who were the children, and heirs and grantees, of the original owners of a subdivided tract of land, and who obtained title to said lots by mesne conveyances which did not

2. See 9 Cal. Jur. 364; 8 R. C. L. 1117.

contain any reference to building restrictions, the evidence showed that, following the subdivision of said tract and prior to the disposition by the original owners of the lots in question, said original owners conveyed certain lots in said tract to a designated grantee by a deed, which was recorded, incorporating most clearly and directly a general plan of building restrictions operating as covenants running with the land, for the benefit of all such adjoining lots and owners of such adjoining lots in said tract, their heirs, devisees, executors, administrators, or assigns; and the trial court erred in holding that said deed and the subsequent deeds of the original owners to other grantees, and which by appropriate reference or language imposed the same restrictions, created only personal covenants and not covenants running with the land.

[4] ID. — SUBSEQUENT CONVEYANCES — REFERENCE TO PRIOR RESTRICTIONS — PROPERTY AFFECTED. — Where the original owners, after executing said deed incorporating most clearly and directly a general plan of building restrictions operating as covenants running with the land, made various other conveyances, each, by appropriate reference or language, imposing the same restrictions, the burden and the benefit of the mutual restrictions imposed by the preceding conveyances, as between the particular parcel conveyed and those previously conveyed, passed as an incident of the ownership of the particular parcel, and similar restrictions were created by the conveyances as between the parcel conveyed and the adjoining lots still owned by the original owners of the tract.

[5] ID. — GENERAL SCHEME OF OWNERS — NEGATIVE EASEMENTS — NATURE—PROPERTY BOUND.—Building restrictions imposed by a general scheme laid out by the original owners for the improvement of the entire tract are in the nature of reciprocal negative easements, and may be created upon a division, and conveyance in severalty to different grantees, of an entire tract; and although some of the lots may have written restrictions imposed on them and others not, if the general plan has been maintained from the inception, and it has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se,* and goes with the land, and is equally binding on all purchasers with notice.

[6] ID. — INFRACTION OF RESTRICTIONS — EQUITY — JURISDICTION—ABSENCE OF LEGAL REMEDY.—To warrant equitable relief in case of infraction of such building restrictions, it is not essential that it should be binding at law, or that any privity of estate should exist between the parties. Jurisdiction attaches upon the ground that an action at law for damages will not do complete justice in cases in which it appears from the character and purpose of the contract that its performance was contemplated by the parties, and not merely

5.   See 9 **Cal.** Jur. 361.

damages for the breach; and in such a case the complaint of the parties seeking to restrain the injurious breach of the restrictions is somewhat in the nature of a bill *quia timet,* in which equity acts to prevent a mischief rather than to redress it.

[7] ID. — PERSONAL COVENANTS — EQUITY — NOTICE — PARTIES. — Personal covenants or agreements bestowing benefits and imposing restrictions upon the use of land may be enforced in equity, where a subsequent purchaser from the covenantor takes with notice of an existing equitable claim or interest in favor of another; and where a proper case is presented equity will enforce a personal covenant or agreement relative to land as effectually as would a court of law had the covenant been one clearly running with the land.

[8] ID. — PRIOR JUDGMENT — ISSUES — PARTIES — RES ADJUDICATA. — In this action to establish and impose a general plan of building restrictions upon certain lots owned in fee by the defendants, it was found that, by reason of the judgment in a prior action (in which the plaintiffs in the present action were the defendants and certain of the defendants in the present action and the predecessors in interest of the other defendants were the plaintiffs), the purpose of which was to remove restrictions and to quiet title to the adjoining lots, and wherein the court determined "That the building restrictions as set forth in the third amended complaint and in the answers of the defendants . . . are binding upon the property therein described and are in full force and effect," the issue as to the validity and force of the building restrictions imposed on the lots in the tract in question had become *res adjudicata.*

[9] ID.—JUDGMENT — ISSUES — PARTIES — NOTICE — RES ADJUDICATA. A judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action; and that is deemed to have been adjudicated in a former action which appears on its face to have been so adjudicated, or which was actually and necessarily included therein, or necessary thereto.

[10] ID.—ISSUES—PARTIES IN PRIVITY—ESTOPPEL BY JUDGMENT.—The estoppel created by the judgment of a court of concurrent jurisdiction directly upon a point is not limited to an action which is identical in form with the former action, or where the same parties are plaintiff and defendant in each of the actions, but

7.   See 7 Cal. Jur. 743; 7 R. C. L. 1188.

9.   See 15 Cal. Jur. 97, 181; 15 R. C. L. 949.

10.   See 15 Cal. Jur. 191.

may be invoked whenever, in the second action, the parties are in privity with the parties to the first action and the same issue is presented for determination which was determined in the former suit.

(1) 22 **C. J.**, p. 1259, n. 88.　(2) 18 **C. J.**, p. 386, n. 17.　(3) 18 **C. J.**, p. 395, n. 28.　(4) 15 **C. J.**, p. 1252, n. 78 New; 32 **C. J.**, p. 350, n. 77.　(5) 18 **C. J.**, p. 385, n. 2, p. 394, n. 16, 18.　(6) 32 **C. J.**, p. 207, n. 78, 79.　(7) 32 **C. J.**, p. 204, n. 44, p. 206, n. 70, p. 207, n. 71.　(8) 34 **C. J.**, p. 1014, n. 36.　(9) 34 **C. J.**, p. 1014, n. 30; 38 **C. J.**, p. 32, n. 22, p. 54, n. 94.　(10) 34 **C. J.**, p. 760, n. 4, p. 1009, n. 4.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Reversed.

The facts are stated in the opinion of the court.

Chandler P. Ward and Howard W. Wright for Appellants.

Haas & Dunnigan and H. E. Forster for Respondents.

WASTE, J.—Plaintiffs brought this action to establish and impose a general plan of building restrictions upon certain lots owned in fee by the defendants, who are the children, and heirs and grantees, of the original owners of a subdivided tract of land, and who are erecting buildings for business purposes in an alleged strictly residential tract. Trial was had before the court sitting without a jury, and the parties entered into a written stipulation by which the essential facts are agreed upon. Judgment was entered for the defendants, and plaintiffs prosecute this appeal.

In 1904 Ferdinand and Emma Holm, husband and wife, were the owners of a parcel of land, since subdivided, and now known as "Robert Marsh & Co.'s Western Heights Tract in the city of Los Angeles." On January 26th of that year, but before any subdivision was had, the owners sold a portion of the land, now lots 12 and 13 in the tract, to James R. Martin. At the time, and as part of the transaction, an agreement was entered into which reads as follows:

"Know all men by these presents, that we, Emma Holm and Ferdinand Holm, of the city of Los Angeles, county of Los Angeles, state of California, are held and firmly bound unto James R. Martin, of the same place, in the sum of

$5,000.00 gold coin of the United States of America, to be paid to the said James R. Martin, his executors, administrators, assigns, for which payment well and truly to be made we bind ourselves, our heirs, executors and administrators, firmly by these presents, sealed with our seals and dated this 26th day of January, 1904.

"The condition of the above obligation is such that whereas, the said Emma Holm is the owner in fee simple of the following described real property situate, lying and being in the city of Los Angeles, county of Los Angeles, state of California: [Description of property.] . . .

"Whereas said Emma Holm and Ferdinand Holm, her husband, have sold and conveyed to James R. Martin, a portion of the above described real property [describing same], for the sum of $5000, in hand paid by said James R. Martin.

"Whereas, as a further consideration of said sale, Emma Holm and Ferdinand Holm have agreed and do hereby agree to cause a subdivision to be made of the premises herein first above described, and duly record the map of such subdivision in the office of the county recorder of said county, to be known as the Western Heights Tract, and conform in all respects to that plat of said premises attached hereto and made a part hereof, in which the premises conveyed to said James R. Martin and secondly herein described, shall be known to be lots 12 and 13 of such subdivision located at the northwest corner of Western Ave. and 20th St., having a frontage of 156 feet on Western Ave., with a depth of 165 feet on 20th St.

"That all deeds conveying lots in said subdivision shall contain building restrictions providing that during the period of 30 years, no residence costing less than $4,000 shall be located on any lot facing on Washington St., 20th St., or 21st street, and not less than $5,000 on any lot facing on Western Ave. That such dwellings shall face the street upon which said dwelling is erected and not otherwise and shall not be placed at a less distance than 30 feet from the property line of said lots, and that no flats, hotels, rooming houses, lodging houses, stores or business houses of any nature or description shall ever be placed or erected upon any of said lots. . . .

197 Cal.—47

"Now the conditions of this obligation is such that if the above bounden Emma Holm and Ferdinand Holm, their heirs, executors and administrators shall and will cause said subdivision to be made and accepted and recorded, and shall and will observe the building restrictions, shall and will fill the said lots, and grade and gravel, curb and sidewalk said property within the time and in the manner herein set forth and provided, without cost or expense to the said James R. Martin, then this obligation to be void, otherwise to remain in full force and virtue.

"EMMA HOLM,

"FERDINAND HOLM."

This agreement, which will be hereinafter referred to as the "Holm-Martin agreement," was recorded shortly after its execution in the office of the county recorder of Los Angeles County. The tract was subdivided, and a map of the subdivision, but containing no matter by way of creating restrictions on the property, was duly filed and became of record. On the 27th of October, 1904, Emma Holm and Ferdinand Holm sold and conveyed to William Miles, Sr., since deceased, lots 16 and 17 of the tract. The deed to Miles, which was also duly recorded, contained the following stipulation:

"Provided, however, that this conveyance is made and accepted upon each of the following conditions, which shall apply to and be binding upon the grantee, his heirs, devisees, executors, administrators and assigns, namely: That said premises shall be used for residence purposes only; that no apartment house, double house, flat, lodging house, hotel, nor any building or structure whatever other than a first class private residence of at least two stories in height with the customary out-buildings, including a private stable, shall be erected, placed or permitted on said premises, or any part thereof, that such residence shall cost and be fairly worth not less than $5000, which residence shall not nor shall any porch or projection therefrom, except steps, be located less than 35 feet from the front line of said premises, and shall face the front line of said premises, namely on Twentieth street; that no out-building or private stable shall be erected, placed or permitted upon said premises at a distance of more than 30 feet from the rear line of said premises, nor until such a residence shall have been erected on said premises.

"Provided, that as to the grantor herein, the breach of any of the foregoing conditions shall cause said premises to revert to the said grantors, their heirs and assigns, each of whom respectively shall have the right of immediate re-entry upon said premises in the event of any such breach; and as to the owner and the heirs, devisees, executors, administrators or assigns of any owner of any other lot or lots in said Western Heights above described, adjoining the above described premises, the above mentioned conditions shall operate as covenants running with the land, for the benefit of all such adjoining lots and owners of such adjoining lots in said tract, their heirs, devisees, executors, administrators or assigns, and the breach of any such covenant or the continuance of any such breach may be enjoined, abated or remedied by appropriate proceedings by any or either of such owners, their heirs, devisees, executors, administrators or assigns.

"Provided, also, that the breach of either of the foregoing conditions or any re-entry by reason of such breach shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith for value as to said land, and any such residence, out-building, or private stable located as above provided, or any part thereof; provided, however, that the breach of either of said conditions or the continuance of any such breach may be enjoined, abated or remedied by appropriate proceedings and provided, also, that each of the foregoing conditions shall remain at all times in full force and effect as against any owner of said premises, or any part thereof, by reason of any breach thereof by any such owner, whether such ownership is acquired by purchase, foreclosure, devise, inheritance or in any other manner.

"And it is further covenanted and agreed by and between the parties hereto that the parties of the first part will not and they hereby agree not to grant, sell or convey any interest in or to any part or parcel of the Western Heights Tract, as the same is delineated and shown upon a map thereof recorded in book 5, page 155 of maps, in the office of the county recorder of Los Angeles county, without inserting in the grant thereof each and every of the covenants and restrictions herein contained and the parties of the first part further covenant and agree that any subse-

quent grant of any of the above described property shall be subject to all covenants and restrictions herein contained.

"Provided, that all and each of the restrictions and conditions and covenants herein contained shall in all respects terminate and end, and be of no further effect, either legal or equitable, either on any property in said Western Heights, or on the parties hereto, their heirs, devisees, executors, administrators or assigns on and after January 1st, A. D. 1944.''

Subsequently, Ferdinand Holm and Emma Holm conveyed to various grantees many lots of the tract, the deed in each instance containing a reference to the "Miles deed form of restrictions," or setting forth the same in identical, or substantially identical, language. The deed to one lot contained the language: "Subject to building restrictions now of record." Deeds to other lots contained substantially the language of the "Miles deed form of restrictions," excepting as to the time of expiration of the restrictions. Another deed contained the language: "Subject to any existing encumbrance appearing of record." The deeds to other lots contained the following restrictions:

"This conveyance is made and accepted subject to the following conditions and restrictions, which shall bind the grantee, their heirs, devisees, executors, administrators, or successors, and in the event of the breach of any of the said conditions or restrictions said premises hereby conveyed shall revert to the grantor, its successors or assigns each of whom respectively shall have the right to immediately re-enter upon said premises in the event of such breach. The said conditions and restrictions shall operate as covenants running with the land for the benefit of all adjoining lots and the owners of all such adjoining lots in said tract, their heirs, devisees, executors, administrators, successors or assigns; it being expressly understood that said condition, and restrictions hereinafter contained shall in all respects terminate and end and be of no further effect, either legal or equitable, after January 1st, A. D. 1939, and that the breach of any of said conditions or restrictions, or any re-entry by reason of such breach shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith for value as to said land.

"No apartment houses, double house, flat, lodging house, hotel, or any building or structure other than a first class private residence to cost and be fairly worth not less than $7,000, and shall be located not less than 35 feet from the said front line of any lot, and only one residence shall be placed on a lot, and shall face the said front line thereof, namely on Washington street.

"The said premises shall not be conveyed or transferred to any person or persons other than of the white or Caucasian race, nor shall any oil wells or machinery for conducting any business whatever be permitted thereon."

On the sixth day of September, 1910, Ferdinand Holm, in consideration of love and affection, conveyed to his wife, Emma Holm, lots 9, 10, and 11 of the Western Heights tract. The deed contained no restrictions, and made no reference to any restrictions as to the use of the property thereby conveyed. Emma Holm subsequently conveyed the three last-mentioned lots, in consideration of love and affection, to her three children, the defendants, Adolph, Louisa, and Lillian S. Holm. This deed likewise contained no restrictions and no reference thereto.

After the tract was laid out and placed on the market, and prior to the commencement of this action, many residences were erected and improvements of great value were made. These residences and improvements complied with the requirements of the Holm-Martin agreement and the stipulations contained in the deed to Miles. They also conformed to and complied with all the requirements contained in the several deeds executed by Emma and Ferdinand Holm to the respective purchasers. The defendants, Adolph Holm, Louisa Holm, and Lillian S. Holm, have, at various times since September, 1920, leased to parties, who are defendants here, certain portions of lots 10 and 11, and the lessees erected and maintained thereon certain buildings, in violation of, and contrary to, the purported restrictions. On the day of the filing of the complaint in this action, the defendants had commenced the erection of another store building on lot 11, and at the date of the trial had completed and were maintaining it in violation of the restrictions. These buildings, to be used for business purposes, were erected over the written protest and objections of the various plaintiffs, served on the defendants, who, at the time

of the service of the notice, and now, dispute the right of the plaintiffs to assert any such restrictions, and deny the validity thereof.

The foregoing facts present the basis for the actual controversy and dispute which has arisen between plaintiffs and defendants relating to the legal rights and duties of the respective parties to this action with reference to the alleged building restrictions in the Western Heights tract, and the obligation of the defendants to preserve and abide by and comply with the same. It is the contention of the defendants that the property in the tract is not burdened with building restrictions of any sort whatsoever.

[1] In support of their right to the relief prayed for, appellants rely, first, and in part, on estoppel, based on oral and written representations, made at the time of and prior to sales of lots by the original owners, to the effect that the entire Western Heights tract was restricted against business uses. As plaintiffs in the court below they, therefore, attempted to show that when the tract was subdivided and the lots were placed on sale, maps and literature were given to prospective purchasers, and to those who bought lots, which contained information concerning the character of the purported restrictions. The trial court very properly sustained the objection of the defendants to the admission of any such evidence. [2] The original owners may have had a general plan of restriction in mind. They may have led the various grantees to believe that the alleged restrictions were executed as part of a general scheme; but it is not the intent of the grantors that governs in such cases. It is the joint intent of the grantors and their grantees. As between the grantors and each of their grantees, the deeds between them constitute the final and exclusive memorial of whatever intention may have existed. (*Berryman* v. *Hotel Savoy Co.,* 160 Cal. 559, 566 [37 L. R. A. (N. S.) 5, 117 Pac. 677] ; *McBride* v. *Freeman,* 191 Cal. 152, 156 [215 Pac. 678].) In *Werner* v. *Graham,* 181 Cal. 174, 185 [183 Pac. 945, 949], the court, speaking through Mr. Justice Olney, said: "This whole discussion may in fact be summed up in the simple statement that if the parties desire to create mutual rights in real property of the character of those claimed here [building restrictions] they ·must say so, and must say it in the only place where it can be given legal effect, namely, in the written instru-

ments exchanged between them which constitute the final expression of their understanding.''

As further supporting their claim that all the lots in Western Heights tract are subject to the building restrictions, appellants rely upon the conditions set forth in the Holm-Martin agreement and the terms and stipulations contained in the many deeds executed by Ferdinand and Emma Holm to purchasers of lots in the tract. It is not claimed by the appellants that the Holm-Martin agreement, in and of itself, effected a restriction upon any of the property owned by the Holms at the time of its execution. They concede that, as between the parties thereto, it amounted to a mere personal covenant which did not run with the land, but argue that, because it was subsequently referred to in many, if not all, of the deeds from the Holms to other purchasers in the tract, it is important as an expression of the intention of the owners of the property with respect to the manner in which the tract should thereafter be subdivided and restricted. The contention that valid building restrictions, amounting to covenants running with the land, were created by the execution of the various deeds by Ferdinand and Emma Holm to the subsequent purchasers of lots in the tract presents the vital question raised by the appeal.

The respondents contend, and the trial court was apparently of the view, that the facts of this case brought it squarely within the facts and the rule applied in *Werner* v. *Graham, supra.* We do not think so. In that case the court said (page 183) : ''It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. The agreement between the grantor and each grantee in such a case as expressed in the instruments between them is both that the parcel conveyed shall be subject to restrictions in accordance with the plan for the benefit of all the other parcels and also that all other parcels shall be subject to such restrictions for its benefit. In such a case the mutual servitudes spring into existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance.

As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding convcyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner. Of this character is *Alderson* v. *Cutting,* 163 Cal. 504 [Ann. Cas. 1914A, 1, 126 Pac. 157]." In the Alderson case referred to, the tract had been platted by its owners for purposes of sale. The plaintiff and the defendant were purchasers of adjoining lots after the subdivision. All deeds made by the owners contained provisions relating to the location and kind of buildings which might be placed upon the lots. Each of the deeds also declared that the conditions stated should, as to each owner of any other lot in the tract, his heirs, successors, or assigns, operate as covenants running with the land for the benefit of such other lots, or their owners. The court held that the validity of the restrictions involved was not open to question, and that in case of their violation relief might be sought by the owner of any lot in the tract for the benefit of which the restrictions were imposed.

[3] In the case now before us, and aside from the Holm-Martin agreement, we have the deed of the owners of the subdivided tract to Miles, incorporating most clearly and directly a general plan of building restrictions operating "as covenants running with the land, for the benefit of all such adjoining lots and owners of such adjoining lots in said tract, their heirs, devisees, executors, administrators or assigns." As indicative of the fact that the restrictions were intended to be covenants running with the land, and not merely conditions on which the conveyances were made, and that it was not intended that the original grantors, their heirs or assigns, should alone have the right to act, it was further provided that "the breach of any such covenant or the continuance of any such breach may be enjoined, abated or remedied by appropriate proceedings by any or either of such owners, their heirs, devisees, executors, administrators or assigns." In further confirmation of the fact that the original grantors had in mind a general plan of building restrictions for the tract, and intended it for the benefit of all the lots, including their own, we find the personal cove-

nant contained in the deeds that they will not convey any
interest in any part or parcel of the Western Heights tract
without inserting in the grant thereof the covenants and
restrictions contained in the Miles deed, and the owners
"covenant and agree that any subsequent grant of any of
the . . . property shall be subject to all covenants and agree-
ments herein contained." On the execution of this deed
a mutual servitude sprang into existence between lots 16
and 17, conveyed to Miles, and the adjoining lots. [4]
As the various conveyances from the original owners fol-
lowed, each, by appropriate reference or language, imposing
the same restrictions as those contained in the Miles deed,
the burden and the benefit of the mutual restrictions imposed
by the preceding conveyances, as between the particular
parcel conveyed and those previously conveyed, passed
as an incident of the ownership of the particular parcel,
and similar restrictions were created by the conveyances
as between the parcel conveyed and the adjoining lots
still owned by the original owners of the tract. (*Werner*
v. *Graham, supra;* see, also, note to *Stevenson* v. *Spivey,*
132 Va. 115 [110 S. E. 367], found in 21 A. L. R.
1276.) We are, therefore, unable to agree with the con-
clusion of the trial court that the language contained in
the deeds from the original grantors to their several grantees,
other than the respondents, created only personal covenants,
and not covenants running with the land, and have no force
and effect. The phraseology of the covenant here in ques-
tion indicates that it was for the benefit of the adjoining
property. The deeds executed by the original owners of the
tract in this case have not been brought here, but we think
it follows from the stipulated facts, reflected in the findings,
as to what covenants and references to covenants already
of record were contained in those instruments, that each
purchaser from the owners was aware of the plan, and took
with the understanding that all the deeds were to contain
the covenant, and bought with that consideration in view.
Furthermore, they had constructive notice of the Miles deed.
These facts do not admit of the contention that the covenant
was only for the advantage or benefit of the grantors, or
that it was other than for the benefit of all the lands and
each purchaser. (*De Gray* v. *Monmouth Beach etc. Co.,* 50

N. J. Eq. 329, 340, 342 [24 Atl. 388]; see, also, *Hemsley* v. *Marlborough Hotel Co.,* 62 N. J. Eq. 164 [50 Atl. 14].)

The deed from Ferdinand Holm to his wife, Emma, of lots 9, 10, and 11 contained no restrictions, no reference to any, and none were contained or referred to in the deed from Emma Holm conveying the same property to her children, the respondents Adolph Holm, Lillian S. Holm, and Louisa Holm. The final and important question is, therefore, Are these lots which are the subject of this litigation burdened with the restrictions imposed by the general scheme laid out by the original owners for the improvement of the entire tract? [5] The law is well settled that building restrictions of the character shown are in the nature of reciprocal negative easements, and may be created upon a division, and conveyance in severalty to different grantees, of an entire tract. "Although some of the lots may have written restrictions imposed upon them and others not, if the general plan has been maintained from its inception, if it has been understood, accepted, relied on, and acted upon by all in interest, it is binding and enforceable on all *inter se.* It goes with the land, and is equally binding on all purchasers with notice." (*Allen* v. *City of Detroit,* 167 Mich. 464, 469 [36 L. R. A. (N. S.) 890, 133 N. W. 317, 319].) [6] But, to warrant equitable relief in case of infraction of such restriction, it is not essential that it should be binding at law, or that any privity of estate should exist between the parties. Jurisdiction attaches upon the ground that an action at law for damages will not do complete justice in cases in which it appears from the character and purpose of the contract that its performance was contemplated by the parties, and not merely damages for the breach. In such a case the complaint of the parties seeking to restrain the injurious breach of the restrictions is somewhat in the nature of a bill *quia timet,* in which equity acts to prevent a mischief rather than to redress it. (*Lewis* v. *Gollner,* 129 N. Y. 227, 234 [26 Am. St. Rep. 516, 29 N. E. 81].) In another case it was said: "Upon this point, the better opinion would seem to be that such agreements [building restrictions] are valid, and capable of being enforced in equity against all those who take the estate with notice of them, although they may not be strictly speaking real covenants, so as to run with the land, or of a nature to create a technical qualifica-

tion of the title conveyed by the deed. This opinion rests on the principle that, as in equity that which is agreed to be done shall be considered as performed, a purchaser of land, with notice of a right or interest in it, subsisting in another, is liable to the same extent and in the same manner as the person from whom he made the purchase, and is bound to do that which his vendor had agreed to perform.'' (*Whitney* v. *Union Ry. Co.,* 77 Mass. (11 Gray) 359, 363 [71 Am. Dec. 715].) The rule is the same in this jurisdiction. [7] As was pointed out in *McBride* v. *Freeman, supra,* at page 155, there can be no doubt that even personal covenants or agreements bestowing benefits and imposing restrictions upon the use of land may be enforced in equity, where a subsequent purchaser from the covenantor takes with notice of an existing equitable claim or interest in favor of another. Where a proper case is presented equity will enforce a personal covenant or agreement relative to land as effectually as would a court of law had the covenant been one clearly running with the land. (*Hunt* v. *Jones,* 149 Cal. 297, 300 [86 Pac. 686, 688].) In that case the court quoted from Pomeroy's Equity Jurisprudence, second edition, sections 688 and 689, viz.: ''The third, and, in its practical effects, by far the most important rule is, that a party taking with notice of an equity takes subject to that equity. The full meaning of this most just rule is, that the purchaser of an estate or interest, legal or equitable, even for a valuable consideration, with notice of an existing estate, interest, claim or right, or to some subject matter, held by a third person, is liable in equity to the same extent and in the same manner as the person from whom he made the purchase; his conscience is equally bound with that of his vendor, and he acquires only what his vendor can honestly transfer. . . . A purchaser with notice of a prior contract to sell or lease takes subject to such contract, and is bound in the same manner as his vendor to carry it into execution. . . . On the same principle, if the owner of land enters into a covenant concerning the land, concerning its uses, subjecting it to easements or personal servitudes and the like, and the land is afterwards conveyed or sold to one who has notice of the covenants, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained

from violating it; and it makes no difference whatever with respect to this liability in equity whether the covenant is or is not one which 'in law runs with the land.' '' (See, also, *Bryan* v. *Grosse,* 155 Cal. 132, 135 [99 Pac. 499].)

While the respondent children of Mrs. Holm may argue that, because of the absence of restrictions in their deed, or reference therein to a plan showing a general scheme of improvement, they took their estate without any notice, express or constructive, that the restrictions which are the subject of the present controversy were intended for the benefit of the entire estate (*Los Angeles Terminal Land Co.* v. *Muir & S. P. Co.,* 136 Cal. 36, 50 [68 Pac. 308, 313]), the evidence and the findings point convincingly to the fact that they had such notice of the covenants that they took their estate bound thereby, and should be restrained from violating them. They are the owners of but three out of the fifty-three lots into which the tract was subdivided by their father and mother. Before they acquired these lots from their mother they knew that the property in the tract, including lots 9, 10, and 11, were burdened with the restrictions. While the trial court found that it was not true that the respondent children became the owners of the lots with either actual or personal knowledge of the existence of any agreement creating restrictions on the property, that finding is based solely on its construction of the provisions in the various deeds executed by the original owners of the tract, and its conclusion that the provisions in the various deeds to plaintiffs, or their grantors, were only personal covenants, and did not amount to covenants running with the land. The court did find, however, that the defendants became the owners of the lots with actual as well as constructive knowledge of the Holm-Martin agreement, and with constructive knowledge of the contents of the ''Miles form of deed,'' and the contents of the deed. It also found that in the year 1914, which was before the respondents acquired any interest in lots 9, 10, and 11, Ferdinand and Emma Holm, then owning lots 9, 10, and 11, united with the owners of lots 1 to 8, inclusive, as plaintiffs in an action brought in the superior court of Los Angeles County (*James* v. *Martin,* No. B13343), the purpose of which was to remove restrictions and to quiet title of the plaintiffs against the claims of the defendants, many of whom are the plaintiffs here, that building restric-

tions had been imposed on all the lots in the tract by the Holm-Martin agreement, the Miles form of deed, and the subsequent deeds from Ferdinand and Emma Holm to their grantees. The defendants there answered setting up as a defense substantially the claims they now assert as plaintiffs in this action. Ferdinand Holm died, and this respondent, Louisa Holm, his executrix, was substituted as a party plaintiff in the action in his stead. After due trial, the court found that each and every lot in the tract, owned by the plaintiffs and defendants in the action, which included lots 9, 10, and 11 owned by Ferdinand and Emma Holm, were within the description set forth in the Holm-Martin agreement, and that many of the deeds contained "other, further, and different and more stringent provisions for building restrictions." Judgment was entered for the defendants, and no appeal was taken. This judgment was rendered before Emma Holm deeded lots 9, 10, and 11 to her children, and the trial court, in the present action, found that the respondents here, "Louisa, Adolf and Lillian S. Holm each had actual knowledge of such judgment," which finding is supported by the evidence.

[8] Appellants contend that the judgment in *James* v. *Martin* determined that lots 9, 10, and 11 are subject to the restrictions sought to be established in this case. The respondents concede that if such effect is to be given to the judgment, the issue has become *res adjudicata,* and that this is so whether or not the judgment was based on an erroneous interpretation of the law, as no appeal was taken. They earnestly contend, however, that the issues tendered by the third amended complaint in *James* v. *Martin,* and by the matters set up in the answer thereto were not the same as those presented in the controversy here. We are of opinion that the issues in the two cases are substantially the same. The pleadings and the findings in the former action establish practically the facts relied on by appellants here. The same agreement, the same deeds, and the same covenants were pleaded there and found to exist as are pleaded and found to exist in the present action. Some of the defendants in the former action are plaintiffs here. The remaining plaintiffs here are the successors in interest of the former defendants by title subsequent. The principal

defendants here are the respondent children of Ferdinand and Emma Holm, who were plaintiffs in the quiet title suit. The parties are here litigating the same issue, namely, the question of the building restrictions. The language of the judgment in *James* v. *Martin* is ''That the building restrictions as set forth in the third amended complaint and in the answers of the defendants . . . are binding upon the property therein described and are in full force and effect.''

It must follow, therefore, that by reason of the notice they had of the judgment in *James* v. *Martin,* the respondents, Adolph Holm, Louisa Holm, and Lillian S. Holm, took lots 9, 10, and 11 bound by the covenants concerning the land entered into by their grantor. We are also of opinion that by reason of the judgment in the former suit the issue as to the validity and force of the building restrictions imposed on the lots in the Western Heights tract has become *res adjudicata.* [9] A judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action. That is deemed to have been adjudicated in a former judgment which appears on its face to have been so adjudged, or which was actually and necessarily included therein, or necessary thereto. (Code Civ. Proc., secs. 1908, 1911.) The validity and effect of the building restrictions here under consideration were actually and necessarily included in the judgment rendered in *James* v. *Martin.* [10] The estoppel created by the judgment of a court of concurrent jurisdiction directly upon a point is not limited to an action which is identical in form with the former action, or where the same parties are plaintiff and defendant in each of the actions, but may be invoked whenever, in the second action, the parties are in privity with the parties to the first action and the same issue is presented for determination which was determined in the former suit. (*Lamb* v. *Wahlenmaier,* 144 Cal. 91, 93 [103 Am. St. Rep. 66, 77 Pac. 765].)

The judgment is reversed.

M'yers, C. J., Shenk, J., Richards, J., Lennon, J., Lawlor, J., and Seawell, J., concurred.