[L. A. No. 9773. In Bank.—June 2, 1930.]

H. J. FRIESEN et al., Respondents, v. CITY OF GLENDALE (a Municipal Corporation) et al., Appellants.

Arthur M. Ellis for Appellant Charles U. Heuser.

Bernard Brennan, City Attorney, W. Turney Fox, City Attorney, Ray L. Morrow, City Attorney, and Frank M. Moody, Deputy City Attorney, for Appellant City of Glendale.

U. S. Webb, Attorney-General; Everett W. Mattoon, County Counsel, and Claude H. McFadden, Deputy County Counsel, Los Angeles County; Walter F. Dunn, City Attorney, Arcadia and El Monte; Richard C. Waltz, City Attorney, Beverly Hills; James H. Mitchell, City Attorney, Burbank; Joseph A. Allard, Jr., City Attorney, Claremont, La Verne and Pomona; Nowland M. Reid, City Attorney, and George W. Trammell, Jr., Assistant City Attorney, Long Beach; Preston Higgins, City Attorney, and C. Stanley Wood, Assistant City Attorney, Oakland; Harold P. Huls, City Attorney, Pasadena; Hugh B. Bradford, City Attorney, and Joseph L. Knowles, Assistant City Attorney, Sacramento; Fred A. Wilson, City Attorney, San Bernardino; M. W. Conkling, City Attorney, San Diego; Charles D. Swanner, City Attorney, Santa Ana; Earl Warren, District Attorney, Alameda County; Ray Bailey, District Attorney, and W. A. McGinn, Deputy District Attorney,

Kern County, Neil R. McAlister, District Attorney, and Alex. J. Ashen, Assistant District Attorney, Sacramento County; George H. Johnson, District Attorney, San Bernardino County; Stephen Connell, District Attorney, and E. S. Lovett, Deputy District Attorney, San Diego County; Guard C. Darrah, District Attorney, San Joaquin County; *Amici Curiae* for Appellants.

Harold L. Watt for Respondents.

SHENK, J.—This is an appeal from a judgment permanently enjoining the City of Glendale and its officers, agents, etc., from constructing a public street across any portion of lot 2 of Tract 4335 in said city and from making any use of said property other than for residence purposes.

The plaintiffs, husband and wife, are and have been since April 3, 1925, the owners of the south seventy feet of lot 1 of said tract. When the tract was laid out all of the deeds conveying lots therein contained, among others, the restriction "That said premises shall be used for residence purposes only." All of the lots in the tract were laid out under a general residential plan and deeds to purchasers thereof contained similar restrictions, each inuring to the benefit of the other lots in the tract. The defendants, Andrews and wife, acquired said lot 2 and the same was accepted by them subject to said restrictions. On the twenty-ninth day of March, 1929, they delivered a deed conveying to the City of Glendale for public street purposes the south fifty feet of said lot 2. The plaintiffs did not join in the dedication. The city accepted the offer of dedication and, by proceedings duly taken under the "Improvement Act of 1911," proceeded to order the improvement and make available to the public for street purposes a strip fifty feet in width and about five hundred feet in length to be known as Pleasant View Terrace and to provide a connecting link between Highland Avenue and Virginia Avenue and having one of its termini in each of the last-mentioned streets. The defendant Charles U. Heuser is the contractor to whom the defendant city proposes to let the contract for the street improvement.

It is the contention of the plaintiffs that so long as the restriction on said lot 2 for residential purposes remains in

force the owner of each lot in the tract laid out under the general plan has a proprietary interest in the portion of the lot so proposed to be improved for street purposes, which interest may not be taken or damaged for public use without compensation as provided in section 14 of article I of the Constitution. The defendants contend, first, that the construction of a public street on the portion of the lot acquired by the city is not inconsistent with the use of land for residential purposes and that said restriction is therefore not violated; and secondly, assuming that the construction of a public street on land restricted for residential purposes be in violation of the restriction, a court of equity should not enjoin the improvement.

■ The undisputed facts show that it was the purpose of the subdividers of the tract and of purchasers of the lots under the restrictions to establish and preserve the tract for high-class residential uses. To do so it must have been contemplated by all concerned that access to the lots in the tract should be had by means of public streets. That adequate street frontage available to the lots would be essential to the accomplishment of the purpose to devote the land to high-class residential uses would seem to admit of no doubt. It is inconceivable that a tract would be laid out with no street frontage incident thereto. Without adequate streets the lots in the tract would be less valuable than if due consideration were given to ingress and egress to and from such lots by means of thoroughfares. It is apparent that the use of a portion of the lots for public street purposes is not only not inconsistent with the use of the remaining lots for the purpose intended, but may be essential to the continuance and preservation of such intended use. There is nothing in the deeds issued in accordance with the general plan to devote the lots to high-class residential purposes which could be construed to prevent the use for street purposes of such of the lots in the tract or portions thereof as the public authorities might find to be convenient or necessary to be established and improved. It is not denied that the public convenience and necessity for the establishment and improvement of said street have been found to exist by duly constituted authority. Also, we may take notice of the fact that the lots in the vicinity might be assessed to acquire land and improve the same for public street pur-

poses upon the theory that the lots assessed would be benefited by the proposed improvement. ■ By reason of the pending proceeding instituted by the city it must therefore be conclusively presumed that public convenience and necessity required the acquisition and improvement of said portion of lot 2 for street purposes.

■ What then is the nature of the title of the city or of the plaintiffs and other lot owners in the tract which would prevent the city from improving the portion of lot 2 for street purposes as now proposed? The building restriction under consideration is in the nature of a negative easement or equitable servitude. (*Martin* v. *Holm*, 197 Cal. 732 [242 Pac. 718].) It is not a positive easement or right in the land itself which would permit of the physical use or occupation thereof by the other lot owners in the tract. It is merely a right enforceable in equity as between the parties to the contract, or their successors with notice, on the theory that it would be unconscionable to permit one who had contracted to use his property in a particular way to violate his agreement. ■ It is a familiar rule that when the physical conditions in the vicinity of the land thus restricted have so changed as to render it unconscionable to enforce the restriction equity will refuse to enforce and the restriction as to its enforceability then fades out of the contract of the parties. ■ It is also well established that the "provisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land." (*Werner* v. *Graham*, 181 Cal. 174 [183 Pac. 945]; 7 Cal. Jur., p. 733.) This rule would seem to be especially applicable where the title to the land is acquired by a municipality for public street purposes. To construe the instrument strictly in favor of the servitude would impose upon the city the obligation to use the land acquired for residential purposes only, a use to which the city obviously has no power to devote land acquired for street purposes. A construction strictly against the covenant would permit the city to acquire the land freed from the restriction. ■ Furthermore, a duly enacted law providing for such a restriction, binding upon private parties, is not binding upon the sovereign unless it appear expressly or by necessary implication that the sovereign consented to be so bound. (*C. J.*

*Kubach Co.* v. *McGuire,* 199 Cal. 215 [248 Pac. 676].)
Much less would the city be bound by the terms of a private contract to which it was in nowise a party.

 It therefore appears that the city may proceed as contemplated unless the plaintiffs and others similarly situated in the tract have such a property interest in the portion of lot 2 acquired by the city as would require that such interest be purchased or condemned before the city may be permitted to construct a public street thereon. It was conceded by counsel for the plaintiffs at the oral argument, and we think properly, that the legal situation of the parties hereto would be the same whether the proposed street were to be improved on property acquired by the city by voluntary dedication or by proceedings in eminent domain. "The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation." (2 Lewis on Eminent Domain, 3d ed., sec. 474.) If the plaintiffs are possessed of a property right in said portion of lot 2 it may be taken for granted that they would be necessary parties defendant in any suit brought by the city to condemn said land for street purposes. Likewise would all other lot owners in the tract, as well as encumbrancers of such other lots, be necessary parties. The plaintiffs expressly "do not contend that parties may by private contract restrict the exercise of the power of eminent domain," yet by private contract with their neighbors they have created, if their position be sustained, an estate inherent in each lot in the tract protected against the taking or damaging thereof without compensation and have brought about a situation where the number of the parties defendant and of the interests to be appraised in condemnation would be manifold. In cases of large tracts the increase in number would practically be prohibitive. It is true that the increase in the number of the defendants and interests to be appraised is not determinative or controlling, provided an estate be created which must be measured in money in the condemnation suit, but such results may be considered where we approach a contention that by private contract an estate in land unknown to the common law or the law of this state is created which would have the result of greatly increasing the cost of condemnation proceedings and making them more burdensome on the public.

As above noted, the interest sought to be imposed on said portion of lot 2 is no more than a negative easement or an equitable servitude. It does not rise to the dignity of an estate in the land itself. It is not a property right, but is a contractual right cognizable in equity as between the contracting parties, not binding on the sovereign contemplating a public use of the particular property taken. This was expressly so declared in the leading case of *United States* v. *Certain Lands,* 112 Fed. 622. The declarations of the court in that case are in accordance with reason and the weight of authority on the subject. No case in this state is in point and decisions in other states, notably *Allen* v. *Detroit,* 167 Mich. 464 [36 L. R. A. (N. S.) 890, 133 N. W. 317], and *Flynn* v. *New York W. & B. Ry. Co.,* 218 N. Y. 140 [Ann. Cas. 1918B, 588, 112 N. E. 913], are not persuasive in the light of the declarations of this court as to the nature of the restrictive covenant relied upon by the plaintiffs herein and the further consideration that parties may not by mutual covenants in private contracts create for themselves an estate in land not known to our law and thus entitle them to compensation where no such right existed before.

The judgment is reversed.

Preston, J., Richards, J., Seawell, J., Curtis, J., and Waste, C. J., concurred.