[Civ. No. 520. Fourth Appellate District.—November 9, 1931.]

CHARLES G. SACKETT et al., Respondents, v. LOS ANGELES CITY SCHOOL DISTRICT OF LOS ANGELES COUNTY (a Public Corporation), Appellant.

Everett W. Mattoon, County Counsel, and Claude H. McFadden, Deputy County Counsel, for Appellant.

Fredericks, Hanna and Morton, Harold C. Morton and Byron F. Story for Respondents.

JENNINGS, J.—This is an appeal from a judgment permanently enjoining defendant from using certain real property for any purpose other than one family residence or single bungalow purposes and specifically from using said real property for playground purposes in connection with an adjacent public school, or otherwise, or for any public school purposes whatsoever. The real property involved herein consists of lots 79, 80 and 81 of Tract No. 5690 in the city of Los Angeles.

Respondents, husband and wife, acquired lot 81 of said Tract No. 5690 on January 9, 1925, and were the owners of said property at the time the present action was instituted. Appellant acquired lots 79 and 80 in said tract during the year 1926. When the tract was laid out all of the deeds conveying lots therein contained, among others, the restriction "That lots 55 to 102 both inclusive, of said tract, shall be used for one family residence or single bungalow purposes only." All of the lots in the tract were laid out under a general residential plan and deeds to purchasers thereof contained similar restrictions, each inuring to the benefit

of the other lots in the tract. Certain other lots, sixteen in number adjacent to the property herein involved, were acquired by appellant during the month of November, 1922. School buildings were erected on eleven of such earlier acquired lots prior to the purchase by respondents of said lot No. 81, and the remaining five lots were utilized for school playground purposes. In March, 1927, two years after respondents had acquired lot No. 81, a second public school building was erected on the five lots which prior to that time had served as a playground and, during the fall of 1927, appellant commenced to utilize lots Nos. 79 and 80 for playground purposes for the younger children of the school.

As to the sixteen lots acquired by appellant in the year 1922, waivers of the above mentioned restriction were secured from the various owners of lots in the tract. No such waivers were secured as to lots 79 and 80. The present action was instituted on November 10, 1927, approximately two months subsequent to the time when respondents first observed that lots Nos. 79 and 80 were being used as a school playground. Respondents' objection to the use of the property for the purpose indicated was prompt and precludes the possibility of giving any consideration to the doctrine of acquiescence.

The principal point of contention between the parties to this action relates to the effect of the restriction contained in the deeds to the various lots. It is not open to dispute that it was the purpose of the subdividers of the tract and of lot purchasers under the restrictions to establish and preserve the tract for residential uses. Respondents contend that a building restriction of the character here under consideration is private property, an interest in real estate in the nature of an easement, and a property right of value which cannot be taken for public use without due process of law and compensation therefor, and that the validity of such restriction is not affected by the character of the parties in interest. Respectable authority is not lacking to sustain this contention. In *Peters* v. *Buckner*, 288 Mo. 618 [17 A. L. R. 543, 232 S. W. 1024], the Supreme Court of Missouri held that the owner of land in a tract where all the real property concerned was covered by a building restriction which prohibited the erection on said land of any building

other than a residence was entitled to a writ of mandate compelling a school district to award him compensation prior to the erection by such district of a school building on land across the street from plaintiff's land. In *Allen* v. *Detroit,* 167 Mich. 464 [36 L. R. A. (N. S.) 890, 133, N. W. 317], the Supreme Court of Michigan held that property owners in a locality covered by building restrictions limiting the district to use for residence purposes only were entitled to an injunction restraining the city of Detroit from erecting a fire-engine house on a site in such district. To the same effect are the decisions in *Flynn* v. *New York etc. R. R. Co.,* 218 N. Y. 140 [Ann. Cas. 1918B, 588, 112 N. E. 913], and *Ladd* v. *City of Boston,* 151 Mass. 585 [21 Am. St. Rep. 481, 24 N. E. 858]. The courts of California have, however, declined to recognize a building restriction of the character here under consideration as a positive easement or right in the land, but have defined it to be merely a right enforceable in equity as between the parties to the contract, or their successors with notice and have said that it is in the nature of a negative easement or equitable servitude (*Werner* v. *Graham,* 181 Cal. 174 [183 Pac. 945] ; *Martin* v. *Holm,* 197 Cal. 733 [242 Pac. 718] ; *Friesen* v. *City of Glendale,* 209 Cal. 524 [288 Pac. 1080]). ▮ While the enforceable character of covenants creating such servitudes is well established, the provisions of an instrument which creates or which it is claimed creates such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land (*Werner* v. *Graham, supra*). In *Friesen* v. *City of Glendale, supra,* it was said that "this rule would seem to be especially applicable where the title to the land is acquired by a municipality for public street purposes." It was pointed out by the learned justice who wrote the opinion that, if the instrument were construed strictly in favor of the servitude, it would result that there would be imposed upon the city an obligation to use the land which it has acquired for residential purposes only, a use to which the city obviously had no power to devote land which it had acquired for street purposes. ▮ The reasoning of the court is cogent and is peculiarly adapted to the situation herein presented. Strict construction of the instrument in favor of the servitude would impose upon appellant the obligation to use the land acquired for residential purposes only, a use to which appel-

lant obviously had no power to devote land which it has acquired for school purposes. A construction against the covenant will permit appellant to acquire the land freed from the restriction. Furthermore, the state and its various political subdivisions may not be bound by the terms of a private contract to which it was not a party (*United States* v. *Certain Lands*, 112 Fed. 622; *Doan* v. *Cleveland Short Line Ry. Co.*, 92 Ohio St. 461 [112 N. E. 505]; *Friesen* v. *City of Glendale, supra*). Public policy has been denominated a vague and uncertain guide at best (*Miller & Lux* v. *Madera Canal etc. Co.*, 155 Cal. 59 [22 L. R. A. (N. S.) 391, 99 Pac. 502]), but instances arise that call for its application. The present action is one that does. It presents the situation of an agency of the state created for the sole purpose of providing adequate educational facilities for the youth of a certain limited area against whom there is sought to be invoked the aid of equity to enforce a restriction created by the provisions of a private contract to which the state was in nowise a party and by which it neither expressly nor by necessary implication consented to be bound. The state may not be thus hampered in carrying out a purpose in which it is so vitally interested.

Judgment reversed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 3, 1931, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 7, 1932.

Curtis, J., and Langdon, J., dissented.