[Civ. No. 3447. Fourth Dist. Dec. 9, 1946.]

FONTANA FARMS COMPANY (a. Corporation), Respondent, v. PAUL C. CRISS et al., Appellants.

Henry F. Rager for Appellants.

Surr & Hellyer for Respondent.

GRIFFIN, J.—Defendants and appellants Paul C. Criss and Helen M. Criss, in 1938, purchased from plaintiff, Fontana Farms Company, a corporation, hereinafter referred to as the "Company," lot 14, block 59, Fontana Townsite, under a contract of sale.

The contract recites that "minimum cost of building shall be $2,000, store building to be completed within one year from date, plans to be approved by building inspector. Copy of Fontana Townsite declaration attached to this receipt." At the time this agreement was signed there had been recorded an amended "declaration of the reservations and restrictions . . . affecting Fontana Townsite," which amended declaration classified the lot here involved as being in a "residence district," and provided that all property within said district should be used for private residence purposes only and that all structures erected should be in accordance with the company's building code, and that plans and specifications must be approved by it and building permits issued for their construction. The instrument also specified certain other lots as being within the "business district" and others in "combined

residence and business district'' and others in the ''industrial district.'' Provision was made therein for amendments or changes in the ''declaration'' and that any of the restrictions or agreements contained therein, with certain exceptions pertaining to liquor and race restrictions, may be waived, or changed by the company, *with the consent of the owners of one-half of the property in any district;* that the provisions of the declaration may be enforced by the company or by the owner of any property in the townsite; that each restriction should be deemed independent of any other; that all the restrictions mentioned should continue until January 1, 1937, and may be extended as to any particular district for a period of ten years thereafter and for successive periods of ten years, without limitation, by the assent ''evidenced by appropriate agreement of the owners of one-half in area of the property shown on said map in said district, and with the consent of the Company.''

It is agreed that there has been one ten-year extension of the restrictions and that unless extended again the restrictions here involved will expire on January 1, 1947.

Lot 14 was a corner lot with 50-foot frontage on Nuevo Avenue, which avenue runs north and south, and had a 180-foot frontage on Merrill Avenue, which avenue runs east and west. Each avenue is 60 feet in width. Lot 14, block 59, and the lots immediately north of it originally had a structural set-back of 40 feet from the front property line of Nuevo Avenue.

From the evidence it appears that several years later, by amendment of the restrictions, the set-back for lots adjoining the Criss lot (No. 14) was reduced to 25 feet, but it was not made applicable to the Criss lot.

The entire block immediately north of the Criss lot No. 14, is improved with residences and the same is true across Nuevo Avenue on the west side. These residences are all uniformly set back 25 feet from the front property line. The Crisses also later purchased lot 13, which is adjoining and to the north of lot 14, in block 59.

Mr. Criss testified that he purchased lot 14 from the company through a Mr. McGregor, vice president (now deceased) and told him that he wanted lot 14 for business; that McGregor said: ''That is for residence''; that he told McGregor that he could not use it unless he could use it for business only and that McGregor said: ''Well, those restrictions can be

waived," and were; that he bought the lot on contract, submitted plans and specifications to the company, which were approved, and a building permit to erect a one-story frame stucco store building upon the east one-half of said lot 14, facing Merrill Avenue, was issued on August 30, 1938. This building permit is in evidence. Thereafter, the store building was thus erected and defendants have conducted a bakery and grocery store there ever since. A frail building for a vegetable stand was later placed on that lot, west of the store building, facing Merrill Avenue, occupying a space 80 feet by 36 feet. Plaintiff did not complain about this construction. The vegetable stand was later condemned by the health department.

Criss further testified that he then went to a Mr. Williams, another vice-president of the company, to secure a "priority" to build a nice building on the remaining portion of lot 14; that Williams told him he could no nothing for him; that he then told the vice president that he was constructing a building and covering the balance of lot 14; that he had a blueprint of it and would bring it up to him to examine; that he started to move away some of the dirt on the lot; that the company told him it would be the end of the week before they would pass on or discuss the plans; that later, the company told him there was nothing wrong with the building but that he "must set it back," and that "right there is where we tangled"; that he told the company of McGregor's agreement with him but the company told him that McGregor was dead and that he no longer was in charge of the company.

The south side of Merrill Avenue is not in the townsite. Several store buildings occupy that property immediately across from defendant's property. The district surrounding defendant's property along Merrill Avenue is fastly developing into business property.

A Mr. Hasbrouck, agent for the company, testified "according to his best recollection," that Mr. Criss had already started the construction of the new building before he brought the plans and specifications to his office; that the plans for the building were not complete and did not show enough of the construction to allow him to issue a permit; that the principal objection to defendant's program was that he was building up to the property line of Nuevo Street and did not allow any

set-back. On cross-examination he testified that certain FHA inspected houses, about 400 in number, had been built in the Fontana Townsite without the necessity of securing a permit for each house, and that certain small buildings of many kinds, and one large concrete block building, had been built without permits because there were no steps taken to enforce the provisions of the declaration; that he was not instructed to police the townsite for this purpose; that therefore a good many buildings "got by without getting permits."

During the trial, counsel for plaintiff offered to stipulate that the Fontana Farms Company would raise no objection to lot 14 being used for business purposes, providing that the "set-back is made and the permit obtained." This offer of stipulation was not accepted. Since this action was commenced the store building has been completed and is now occupied by tenants.

After trial, the court found that after the building was in process of construction defendants did submit to plaintiff a floor plan but no detailed specifications; that plaintiff has not waived nor abandoned any of the restrictions mentioned in the amended declaration, as set forth in the complaint, in reference to residential districts, set-backs or otherwise, or the enforcement of the same; that no physical conditions in the vicinity have rendered it unconscionable or oppressive in equity or otherwise to enforce requirements of any of the restrictions with this exception, that since all of the residences on the lots immediately north of defendant's property are set back only a distance of 25 feet from the property line, it would be unconscionable and oppressive to require defendants to set back the building on the Criss lot (14) a greater distance than 25 feet from the east boundary line of Nuevo Street. It is then found that it is fair and equitable to restrain defendants from building within 25 feet of said east boundary line of Nuevo Street and to require the "removal of any building or portion thereof on the Criss lot which is within 25 feet of said east boundary line."

From the facts found the trial court concluded (1) that defendants be *permanently* enjoined and restrained from erecting or constructing any building or part thereof within 25 feet of the east boundary line of Nuevo Street; (2) that defendants be *permanently* enjoined from hereafter erecting any building upon said lot 14, or any part thereof, unless plaintiff shall have first approved the architecture thereof and

issued a written permit to construct same; (3) that defendants be required to forthwith tear down and remove from lot 14, the building situated on the westerly portion of said lot, which "building extends easterly from a point within ten feet of the easterly boundary line of said Nuevo Street, except such portion thereof, if any, as plaintiff may hereafter consent in writing may remain on said Criss land; and particularly but not exclusively to forthwith tear down, demolish and remove from said lot 14 any portion of said building situate within 25 feet of Nuevo Street, as delineated on said map.''

The judgment, as entered, followed closely the wording of the conclusions as above related.

It is defendants' argument that the restrictions were not applicable and should not be enforced by reason of the physical condition of the land; that the contiguous land had so changed as to render it unconscionable and oppressive in equity to enforce the restrictive covenants in that the land had changed from a residental district to a business district; further, that plaintiff had knowingly permitted defendants to erect a business edifice upon said land; and that plaintiff waived and abandoned the right to enforce the restrictions in failing to enforce the restrictions in respect to others.

In this respect it is contended that the restrictive covenants, being in the nature of a contract between the parties, cannot be changed by the court, i. e., that the complaint seeks to restrain defendants from building within 40 feet of the front property line in accordance with the restrictive covenant applicable to lot 14; that the court nevertheless found that it would be unconscionable and inequitable to require them to set the building back 40 feet and by its judgment required them to set it back 25 feet in violation of the written restrictive covenant; that since the set-back for adjoining lots was reduced to 25 feet the 40-foot set-back applicable to the Criss lot was thereby entirely eliminated, citing *Friesen* v. *City of Glendale,* 209 Cal 524 [268 P. 1080].

It is next contended that there is no sufficient evidence to support the finding that the restrictions as to a building permit and set-back were not waived and that they were enforceable by the company; that the evidence conclusively shows a waiver of the restriction as to lot 14 and that by the actions and conduct of plaintiff in allowing defendants to build, under written permit, a store building on the easterly

one-half of lot 14, that that lot was changed from a residential lot to a business lot, and that, therefore, it should be affected only by the restrictions relating to business lots.

The lot in question was described as being within a "residence district," to which certain restrictions apply, and so far as the record is concerned, remain in effect, unless there is a waiver or change of those restrictions by the proper parties. The complaint alleges that lot 14 is in a "residence district" as defined in the amended declaration. The court found this allegation to be true. It also specifically found that there had been no waiver of the set-back restrictions set forth in the instruments under which the property was conveyed, but held that it would be inequitable to enforce it in its entirety and that it would be equitable to allow a partial enforcement as to 25 feet of the 40-foot set-back requirement.

The amended declaration specifically provides that "all property in said district shall be used for private residence purposes only," with exceptions not applicable to store buildings, and that all structures erected thereon shall be in accordance with the company's building code. It also provides that only in such districts shall there be 40-foot set-backs. No such set-back restrictions are made applicable to the "combined residence and business district" or the "business district." Section 12 thereof further provides that the company may "with the consent of the owners of ½ of the property in any district . . . affected thereby, change or modify such restrictions . . . covenants . . . and agreements as may be deemed wise and necessary except as above otherwise provided."

Under the amended declaration, Fontana Farms Company, at its option, was entitled to claim a forfeiture of title for any breach of restriction or covenant, or restrain, by injunction, any breach of them. No court of equity would have held that the corporation was entitled to claim forfeiture of defendants' title to lot 14 by reason of the original construction of a store building on the rear of that lot, which store building was built with the apparent consent and acquiescence of the plaintiff.

The evidence clearly shows that plaintiff would have been estopped from claiming such a forfeiture when it waived compliance with the restrictions applicable to a "residence district." In other words plaintiff, by its actions, endeavored to change or modify the agreement as to the character of that

lot and its restrictions. By its actions it consented that said lot might be used for either residence or business purposes. This would bring it within the classification of "combined residence and business district" or "business district," and, under either classification, no restriction is made regarding set-backs.

Plaintiff should now be estopped from claiming a breach of any restrictions as to lot 14 under the amended declaration pertaining to a "residence district" when by its actions it has, in effect, endeavored to change such lot classification from a "residence district" to a "combined residence and business district." The amended declaration provides specifically that the restrictive provisions referred to are "declared to be for the benefit of all of said lands (in the district) and shall inure to the benefit of . . . all . . . persons acquiring any interest in said property."

No provision is made whereby plaintiff could have waived such restrictions or agreements for the other property owners in reference to the set-backs or character of the buildings that could be built in a residence district. However, it does provide that the company may, *with the consent of the owners of one-half of the property in any district,* change or modify such restrictions, reservations and agreements as it may deem wise and necessary. Apparently, the company had no consent of one-half of the property owners to the original construction of the store building on lot 14. It therefore stands in this position: It is telling defendants that it sold them lot 14, with the understanding that they could erect a store building thereon; that it approved the plans and specifications for its erection; and that it stood by and watched its completion and accepted defendants' money for the lot, knowing all the time that lot 14 was in a "residence district" and that no store buildings were permitted to be erected on that lot unless one-half of the property owners in the district and the plaintiff consented to a change in the restrictions and covenants set forth in the amended declaration. Furthermore, it failed to secure the consent of those property owners in its endeavor to change or modify the classification of that lot. Not acting in behalf of the other property owners, but alone, it is seeking an injunction enjoining defendants from using this lot without complying with the 40-foot set-back provisions applicable to a "residence district." Equity should

not now come to the aid of plaintiff in its endeavor to enforce such set-back provisions.

Restrictions in a deed to a lot expressly made for the benefit of other lots in the same tract are valid and enforceable by the owners of such other lots. (*Alderson* v. *Cutting*, 163 Cal. 503 [126 P. 157, Ann.Cas. 1914A 1].) Whether defendants would be entitled to raise such an estoppel or waiver in an action instituted by the other property owners, is not before us. Those property owners are not parties to this action nor would they necessarily be bound by the judgment rendered by the trial court under the pleadings.

The finding that defendants did submit to plaintiff a floor plan of the building but no detailed specifications therefor, requires some consideration. Under the amended declaration, all buildings were to be constructed in accordance with the company's building code for the several prescribed districts after a building permit had been issued by the company. The injunction requiring defendants to tear down the structure erected on the west one-half of lot 14, apparently was not predicated solely upon the failure of defendants first to obtain a building permit therefor, nor upon the ground that defendants erected the building without having the architecture thereof first approved by the plaintiff. If lot 14 is still in a "residence district," as implied by the pleadings and the findings of the court, then, under the amended declaration, plaintiff was not authorized to issue a permit to the lot owner to build a store building in that district, and accordingly, was not authorized to approve plans and specifications for such a store without changing the district or the covenants in the amended declaration, and this change or modification could only be brought about by obtaining the consent of one-half of the property owners.

The findings are not supported by the evidence and are inconsistent in themselves. In one paragraph it is found that there was a 40-foot set-back as to lot 14; that said lot was in a "residence district"; but it is then found that defendants must tear down and remove all of said building recently erected on lot 14 unless plaintiff consents in writing that all but 15 feet of it may remain. Under the amended declaration it was necessary to have the added consent of one-half of the property owners to any change in the character of the district.

The judgment further recites that defendants shall be *permanently* enjoined from constructing any building upon

lot 14 within 25 feet of the boundary line of Nuevo Street. This portion of the judgment is erroneous. Under the terms of the amended declaration, all restrictions, conditions, covenants and agreements contained therein expire as of January 1, 1947, unless extended for another ten years, as provided in the agreement. There is no evidence of such renewal. The injunction could not prohibit defendants from building a store building on lot 14 after January 1, 1947, unless a proper extension were obtained. (*Diederichsen* v. *Sutch*, 47 Cal. App.2d 646 [118 P.2d 863].)

Judgment reversed.

Barnard, P. J., and Marks, J., concurred.