ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

CAROLINE D. HAYES, ALICE W. HAYES, EDWARD W.
HAYES and MARY A. H. PENNINGTON

*v.*

THE WAVERLY AND PASSAIC RAILROAD COMPANY and
THE PENNSYLVANIA RAILROAD COMPANY.

1. Where a grantor, retaining a portion of the land out of which the grant
is made, enters into an express written understanding with his grantee, what-
ever may be its form, whether covenant, condition, reservation or exception,

345

which restricts the enjoyment of the portion of the land which is conveyed in order to benefit the portion retained, and the restriction is reasonable and consonant with public policy, whether it runs with the land and is binding at law or not, it will be enforced in equity against the grantee and any one subsequently acquiring title to the land with notice of it, at the instance of the grantor or of the subsequent owner or owners of parts of the remaining land, when its violation results in material detriment to the portion of the remaining land which the complainant in the suit for its enforcement holds.

2. Where such express written understanding is incorporated in a deed which constitutes a muniment of title to the land, the law conclusively charges each subsequent holder of the title with notice of it.

3. If the restriction of enjoyment of the alienated land extends to the use of it by an elevated railroad, although the railroad be operated with care and skill, the owner of the land, for the benefit of which the understanding was had, may cause the inhibited use to be restrained by injunction.

On demurrer to bill.

*Mr. James B. Vredenburgh,* for the demurrants.

*Mr. Howard W. Hayes, contra.*

THE CHANCELLOR.

The bill, in substance, alleges that on the 9th of March, 1889, the complainants were seized in fee of three plots of land in the city of Newark, the first of which constitutes two hundred and seventy-five feet of the easterly end of the block which is bounded by Berlin, Dresden and Niagara streets and Hamburg Place, having frontages of two hundred and seventy-five feet each on Berlin and Dresden streets and two hundred feet on Niagara street, the second of which is in the same block, twenty-five feet westerly from the first plot, fronting one hundred and seventy-five feet on Dresden street and running back from that street one hundred feet, and the third of which is on the opposite side of Dresden street from the first and second plots, and fronts between four hundred and five hundred feet on Dresden street and is one hundred feet deep; that on the day named they conveyed to Margaret Tammany in fee one-half of the first-described of their plots of land, which half may be definitely

indicated as follows : Beginning at the westerly corner of Dresden and Niagara streets; thence northwesterly, along Niagara street, one hundred feet; thence at right angles southwesterly, through the centre of the block, two hundred and seventy-five feet; thence southeasterly, one hundred feet, to Dresden street, and thence northeasterly, along Dresden street, to the beginning; and as well the secondly-described of their plots, which fronts one hundred and seventy-five feet on Dresden street and extends back one hundred feet to the centre of the block.

The deed to Margaret Tammany, which was duly accepted by her, contains the following stipulation :

"The said premises are conveyed subject to the following restrictions which the said party of the second part for herself, her heirs and assigns covenants to observe and keep, namely: that said premises shall not be used for the purpose of a slaughter house or manufactory of fertilizers, glue, vitriol, or any other purpose that shall be a nuisance or detrimental to the surrounding property of the party of the first part, this restriction, however, is to be held not to apply to a railroad on the level of the adjoining streets."

That Margaret Tammany sold and conveyed the rear half, or fifty feet, of each of the plots of land that were conveyed to her, and, by sundry *mesne* conveyances, her title to that portion of her land is now vested in the Waverly and Passaic Railroad Company; that during the year 1890 a railroad track was laid over that land, the title of which thus vested in the railroad company, on the level of the adjoining streets, but subsequently it was taken up and, at the filing of the complainants' bill, the railroad company was engaged in erecting an embankment upon it which, when completed, will be fifteen feet high, upon which its railroad will be laid and operated; that the railroad embankment, when completed, will immediately adjoin the rear of part of the complainants' property and be within a short distance, less than two hundred feet, from the remainder of it; that the locality of the property is suitable for residential purposes and is used for such purpose and not for business; that the proposed elevated railroad will be injurious and detrimental to the complainants' property, make it less desirable as a place of residence and materially reduce its selling value; that immediately after

learning of the project of the railroad company the complainants notified its president of their purpose to seek by injunction the restraint of the use of the land derived from Margaret Tammany for such purpose. The bill prays for an injunction to restrain the operation of the railroad on the embankment, and for such other relief as may be agreeable to equity and good conscience.

The ground of demurrer is that the bill does not state a case which will entitle the complainants to relief in this court.

It is settled by adjudication in this state, as a general rule, that where a grantor, retaining a portion of the land out of which the grant is made, enters into an express written understanding with his grantee, whatever may be its form, whether covenant, condition, reservation or exception, which restricts the enjoyment of the portion of the land which is conveyed, in order to benefit the portion retained, and the restriction is reasonable and consonant with public policy, whether it runs with the land and is binding at law or not, it will be enforced in equity against the grantee and any one subsequently acquiring title to the land with notice of it, at the instance of the grantor or of the subsequent owner or owners of parts of the remaining land, when its violation results in material detriment to the portion of the remaining land, which the complainant in the suit holds. *Brewer* v. *Marshall, 4 C. E. Gr. 537; Van Doren* v. *Robinson, 1 C. E. Gr. 256; Kirkpatrick* v. *Peshine, 9 C. E. Gr. 206; Gawtry* v. *Leland, 4 Stew. Eq. 385; Pope* v. *Bell, 8 Stew. Eq. 1; Coudert* v. *Sayre, 1 Dick. Ch. Rep. 386; De Gray* v. *The Monmouth Beach Club House Co., 5 Dick. Ch. Rep. 329.*

The principle upon which jurisdiction in such cases is assumed clearly appears in the following extract from the opinion of Lord Cottenham, in *Tulk* v. *Moxhay, 2 Phil. 774,* the leading case upon this subject:

" That this court has jurisdiction to enforce a contract between the owner of land and his neighbor purchasing a part of it, that the latter shall either use or abstain from using the land purchased in a particular way, is what I never knew disputed. Here there is no question about the contract; the owner of certain houses in the square sells the land adjoining, with a covenant

from the purchaser not to use it for any other purpose than as a square-garden. And it is now contended, not that the vendee could violate that contract, but that he might sell the piece of land, and that the purchaser from him may violate it without this court having any power to interfere. If that were so, it would be impossible for an owner of land to sell part of it without incurring the risk of rendering what he retains, worthless. It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased. Of course, the price should be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assignee being allowed to escape from the liability which he had himself undertaken.

"That the question does not depend upon whether the covenant runs with the land, is evident from this, that if there was a mere agreement and no covenant, this court would enforce it against the party purchasing with notice of it; for, if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

As to this principle, Chief-Justice Beasley, in *Brewer* v. *Marshall, supra,* after reference to several cases, said: "It will be found, upon examination, that these decisions proceed upon the principle of preventing a party having knowledge of the just rights of another, from defeating such rights, and not upon the idea that the engagements enforced create easements or are of a nature to run with the land."

It is suggested that it does not appear by the bill that the Waverly and Passaic Railroad Company had notice of the stipulation between the complainants and Margaret Tammany. It, however, appears that such stipulation was contained in the deed to Margaret Tammany, and that such deed is one of the muni-

ments of the title of the Waverly and Passaic Railroad Company. Hence, the law charges the company with knowledge of all that that deed contains. Upon this subject, the chief-justice, in *Brewer* v. *Marshall, supra,* said : " The law conclusively charges him with such information, because the deed which contains this restrictive agreement constitutes one of the muniments of his own title. The covenant is contained in the conveyance of the forty-eight-acre tract to the grantor of the appellant, and that tract was reconveyed by the grantor to Cheeseman, the original owner, who then conveyed it to the respondent, thus incorporating in the chain of the title of the latter the covenant in question. In this position of things the respondent is chargeable, by incontestable legal presumption, with full knowledge of the existence of the stipulation in question, for the rule upon that subject is settled by a long series of decisions, as will appear from the cases collected in the voluminous notes to the case of *Le Neve* v. *Le Neve, 2 Lead. Cas. Eq. 182.*"

It is next insisted that the complainants have no right to equitable relief, because the erection and operation of the defendants' railroad are authorized by law, and, being executed within the limits of the legislative authority and with due skill and care, the damages resulting therefrom to abutting property are merely incidental to the lawful undertaking, and no recovery can be had because of them. It is unquestionably true that the owner of abutting property cannot recover for damages which are merely incidental to the lawful, careful and skillful operation of a railroad authorized by law. *Beseman* v. *Pennsylvania R. R. Co., 21 Vr. 235 ; S. C., affirmed on error, 23 Vr. 221.* The reason upon which that rule rests is that the railroad is a public agency for beneficent ends, whose maintenance would be impracticable if all damages incident to its proper operation must be paid. It is perhaps difficult to logically reconcile this rule to the full extent to which its protection may be invoked, with the constitutional requirement that private property shall not be taken for public use without compensation. *Pennsylvania R. R. Co.* v. *Angel, 14 Stew. Eq. 316, 330.* That which is accepted in this state as the reconciliation is stated in the opinion in *Bese-*

*man* v. *Pennsylvania R. R. Co.* Be this, however, as it may, the rule is established beyond question by this court, at this time. But the rule is not to be carried beyond the limits of strictly incidental damages. It does not extend in the extinction of duty and right growing out of express contract which the land, used for railroad purposes, owes to abutting lands. If the erection or operation of a railroad impairs or destroys such a right, compensation for it must be made. In other words, the immunity does not extend to the sequestration of express rights in the property which the railroad takes into possession, even though those rights may be appurtenant only to neighboring land, which, in their absence, would be obliged to submit to the damage they protect against, without remedy. *Story* v. *New York Elevated R. R. Co., 90 N. Y. 122; Lew. Em. Dom.* §§ *56, 142.*

A stipulation such as that which is contained in the deed to Margaret Tammany, whether it runs with the land or not, affecting the price paid for the land by Margaret Tammany, becomes property purchased with value, which equity will protect. It is the right of amenity in the land of the railroad company in the nature of an easement or servitude, appurtenant to the remaining land of the complainant. *Coudert* v. *Sayre, supra.* The language of Lord Cottenham, in *Tulk* v. *Moxhay,* already quoted, is to be remembered at this point: " Of course the price would be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price in consideration of the assignee being allowed to escape from liability which he had himself undertaken."

It is not for a moment questioned that the railroad company would be unable to enter upon the Tammany land without paying its value. When it purchased from the grantees of Tammany it found the land charged with a duty in favor of the complainants, the existence of which lessened, or should have lessened, the purchase price. The difference between that price and the real value is the consideration which the complainants have paid for their right in the Tammany land. The right thus

bought is their property and must be paid for. I think they are entitled to have it protected in this court, for even if the stipulation from which it originates runs with the land, the redress at law must be had through a multiplicity of suits, and therefore is inadequate.

Lastly, the question arises whether an elevated railroad is within the inhibition of the stipulation in question. Slaughter-houses and manufactories of fertilizers, glue and vitriol are expressly within it and so also are nuisances. A railroad is not within any of these descriptions. Existing under authority of law it is not a nuisance. The remaining forbidden use is "a purpose detrimental to the surrounding property." Is the erection and operation of the elevated railroad such a use? This question must be answered in view of the saving clause at the end of the stipulation, for the intention of the parties to the stipulation, manifested by the whole instrument, is the thing to be ascertained. That clause excludes a railroad on the level of the adjoining streets. The question, then, is reduced to this, whether an elevated railroad, as distinguished from a railroad upon the level of the street, is detrimental to surrounding property in that locality. The bill charges that it is because the locality is suitable only for residential purposes. It may be that the reason given, as applied to the particular locality in question, in view of its peculiar conditions and the proposed use of the elevated railroad, will not support the charge. The charge, however, upon this demurrer, which does not specially attack it, is sufficient. The demurrer admits the charge in its full force, and that admission must stand upon this argument, even though we may be able to conceive of circumstances which would destroy the reason upon which it is based.

I think that the bill presents a meritorious case within the jurisdiction of this court. It is obvious that the court must act by injunction, and it may be well here to say, in view of the fact that injunction is asked to stay an important public work, that it is the general practice of a court of equity in such case either to withhold its final decree until opportunity may be given the parties to agree upon proper compensation for the complainants'

right, or, that failing, until opportunity may be had to take the right by proceedings in condemnation (*Story* v. *New York Elevated R. R. Co., supra*); or if for any reason that may not be done, to itself ascertain the value of the right to be protected, and decree that unless within a certain time that value be paid to the complainants, the inhibited use shall be restrained.    *Carpenter* v. *Easton and Amboy R. R. Co., 9 C. E. Gr. 249; Church of the Holy Communion* v. *Paterson Extension R. R. Co., 1 Dick. Ch. Rep. 372; S. C., affirmed on appeal, 2 Dick. Ch. Rep. 600.*

The demurrer will be overruled.