105 N.J. Super. 442 (1969)
252 A.2d 749
JAMES B. DUKE AND BARBARA P. DUKE, PLAINTIFFS,
v.
JOHN F. TRACY, EILEEN M. TRACY, AND FRANK FORMICA, DEFENDANTS, AND TOWNSHIP OF BERKELEY HEIGHTS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, INTERVENOR.
Superior Court of New Jersey, Chancery Division.
Decided April 25, 1969.
*443 Mr. Harry Krieger, attorney for plaintiffs.
Mr. Peter C. Triolo, attorney for intervenor.
HERBERT, J.S.C.
In 1956 there was filed with the Register of Union County an approved map showing a small *444 real estate development of ten lots all fronting upon the easterly side of Timber Drive in Berkeley Heights. The numbers of the lots as given on the map run from 19 to 19-9. Plaintiffs own number 19-4. There is a one-family house on it in which they live. The defendants Mr. and Mrs. Tracy hold lot 19-5 on which their one-family house stands just to the north of plaintiffs' property.
The cause of this controversy is a proposal to devote a strip of the Tracy lot to a public way ten feet wide which will run along the side line of the plaintiffs' property. From the rear of the Tracy lot the public walk would continue in an easterly direction to the next street, which is Wentworth Drive. The potential usefulness of the walk is plain: A good look at the marked copy of the township map which is an exhibit shows that pedestrians from Wentworth Drive and several neighboring streets would find the walk a relatively short route to use in going back and forth to school, to the community swimming pool and possibly to the railroad station.
The ten lots shown on the subdivision map of 1956 lie side by side in a row. At the southerly end, numbers 19 and 19-1 were never subjected to deed restrictions. The other eight were sold by the developer by deeds containing uniform restrictions. His conveyance of lot 19-5 (now the Tracy property) was dated April 1, 1957, and that of lot 19-4 (plaintiffs') was dated July 31, 1958. Five of the other lots were included with number 19-4 in the latter deed. Another of the eight restricted lots (19-6) was conveyed out by the developer November 8, 1956.
Plaintiffs and the Tracys were not original purchasers from the developer. Plaintiffs got title January 8, 1964 and their deed, as well as other deeds in their chain of title, includes the restrictions. The Tracys took title in 1965 from U.S. Home and Development Corporation, which had held under a chain of title in which all deeds contained the restrictions.
The deed language pertinent for present purposes is:
*445 "This conveyance is made subject to the following restrictions which shall run with the land:
"1. All lots in the tract shall be known and described as residential lots. No structure shall be erected, altered, placed or permitted to remain on any residential building plot other than one single family dwelling and a private garage for not more than three cars."

* * * * * * * *
"4. The land herein conveyed shall not be used for street purposes."
Mr. and Mrs. Tracy acquired their lot by a deed which purported to reserve
"... a perpetual easement and right of way for pedestrian walk-way purposes in favor of and for use by the public at large, through, on and over the portion of the premises conveyed as hereinafter described, together with the right to enter upon the premises in order to install or pave said walk-way and to maintain same and to repair same."
Shortly after this suit was started U.S. Home and Development Corporation, the Tracys' grantor, conveyed the easement thus reserved to the Township of Berkeley Heights. The township then came into the case as an intervenor. It is the only active defendant, those originally named in the complaint having defaulted.
Plaintiffs have taken the position that the restrictive covenants imposed by the developer assure them that the whole Tracy lot shall be used for one-family residential purposes only and protect them against a public walk under their side windows. In response, a number of arguments have been made for the township.
One of these is that the proposed public way, being for pedestrians only, would not violate the covenant against use "for street purposes." Today's common conception of a street includes a roadway for vehicles and usually, if not always, sidewalks for pedestrians. There may be underground utilities as well. However, the problem does not involve defining a street as a matter of municipal law. Rather, it is one of determining what the developer and his buyers and their *446 successors in title have contracted for. From that approach I think a covenant against use of land for street purposes applies to a paved public way ten feet in width even though that way will not be available to motor vehicles.
Whether my views about the covenant against use for street purposes are or are not correct, there is the covenant about residential use to be considered. The prohibition of that covenant is expressly directed to structures. It provides that no "structure" shall be placed "on any residential building plot other than one single family dwelling and a private garage * * *." A public walk to be useable would require paving of some sort and in that way would become a structure on the Tracy lot. Even if it could remain unpaved, its presence in my opinion would conflict with the covenant. The purpose was to give protection against uses not residential in character. That purpose emerges clearly enough to override any technical argument that a place for the public to walk need not be a "structure."
A number of cases have presented in one way or another the general problem which is involved here. A collection of those cases can be found in 25 A.L.R.2d 904 (1952) in a note entitled "Maintenance, use or grant of right of way over restricted property as violation of restrictive covenant." At page 906 the author said:
"Generally speaking, the cases disclose that the courts are inclined to hold that the maintenance, use, or grant of a right of way across property restricted in its use is a violation of the restriction if such maintenance, use, or grant seems to be inconsistent with the parties' intention in creating or agreeing to the restriction and with the object sought to be thereby accomplished, while if it does not interfere with the carrying out of the parties' intention and the purpose of the restriction, it will not be held to be a violation."
One of the cases cited is Hayes v. Waverly & P.R. Co., 51 N.J. Eq. 345 (Ch. 1893), which will be discussed later. Another is Klapproth v. Grininger, 162 Minn. 488, 203 N.W. 418, 39 A.L.R. 1080 (Sup. Ct. 1925), which is strikingly similar on its facts to the case before me. Klapproth *447 involved block 1 of a development called Bellaire, consisting of 43 lots fronting on a lake and extending southerly from the lake 185 feet to a public highway. The plan was to make this block a residential district for lake homes. The deeds to 30 of the 43 lots contained a covenant "that said land shall be used for residence purposes only." Two contiguous lots, each 60 feet in width, were conveyed to defendant Grininger in 1909, by a deed which contained the restrictive covenant. Ten years later he conveyed one of the lots to plaintiff Klapproth subject to the same restriction. Plaintiff then erected a dwelling house which he occupied with his family. Defendants  other than Grininger and his wife  owned lots across the highway at the rear of the lakefront lots. In 1922 Grininger granted to them, as appurtenant to their lands, the perpetual right for themselves, their families and invited guests, to pass over the east ten feet of the lot next to plaintiff's for the purpose of going to and from the lake and using and enjoying its recreational facilities. Grininger's grantees immediately thereafter constructed a dock extending from this ten-foot strip into the lake, a distance of 75 feet, and then at right angles a distance of 20 feet in front of plaintiff's lot. Many people passed over the strip in going to and from the lake for the purpose of enjoying boating, fishing and bathing, and in so doing passed within a few feet of plaintiff's dwelling house. Claiming that this easement granted by Grininger to the other defendants was a violation of the covenant in the deeds, plaintiff brought an action to enjoin defendants from using the ten-foot strip. The trial court enjoined, and on appeal the Supreme Court of Minnesota affirmed, saying:
"The covenant here in question provides that the land owned by Grininger shall be used `for residence purposes only.' By a formal instrument, he has granted, as appurtenant to properties outside block 1, a perpetual right of way for passing to and from the lake over a strip 10 feet in width adjoining plaintiff's property. Such use of the land is not within any definition of a residence purpose; and devoting it to the purpose of a passageway for the occupants of other lands necessarily precludes using it for residence purposes, save perhaps *448 as a means of ingress and egress. We think that the use made of this strip of land is inhibited by the covenant and that the learned trial court reached the correst conclusion." (at p. 419)
Though the Minnesota easement had not been acquired by a municipality, the use found to be a violation of the restrictive covenant was the same as the prospective use involved here, namely, a passageway for the occupants of other lands across an area restricted for use as a site for one-family residences.
If the Tracys, or a predecessor in their chain of title, had attempted to grant this right of way to a group of private parties, as distinguished from the grant to the township, I would follow the reasoning of the Minnesota court and would hold that the negative covenant relating to residential use should be enforced by an injunction forbidding the opening of the proposed passageway. However, the inquiry must go farther because it has been held in a number of jurisdictions that a public body is not subject to the effects of a restrictive covenant in the same way that private citizens would be.
The annotation already cited collects some authorities on public rights of way in relation to restrictive covenants (25 A.L.R.2d, at p. 914 et seq.). The most enlightening discussion of this problem which I have found is in 2 American Law of Property, § 9.40, p. 448 et seq. (1952). There the author, addressing his comments primarily to a public acquisition by eminent domain, points out that a number of cases have held that nothing need be paid for rights under a covenant which was applicable before a public taking to the lands being taken. That result has been reached on various theories. An example of this type of case is Friesen v. City of Glendale, 209 Cal. 524; 288 P. 1080 (Sup. Ct. 1930). Other courts have held to the contrary, and concerning their decisions the author has written:
"On the other hand, the better reasoned authorities have held that the extinguishment of an equitable servitude under the power of eminent domain is the taking of private property for public use for which compensation must be paid. These cases clearly turn on the *449 premise that the enforcement in equity of covenants and agreements running with the land is the recognition of their existence as equitable property interests of a nature similar to legal easements, and that such property interests are compensable in the exercise of the power of eminent domain. In some of these cases the courts have indicated the fallacy in the argument that building restrictions are void as to the government because they interfere with the exercise of a governmental function, by pointing out that they do not prevent the exercise of the governmental function but merely require compensation to be paid for their infringement. With this conflict of authority on the question of the requirement of payment of compensation for the extinguishment of equitable servitudes in the exercise of the power of eminent domain, the American Law Institute saw fit to adopt the view requiring payment of compensation to those persons owning the benefited land to which the equitable servitude was appurtenant." (at pp. 449-450)
The footnotes to this quotation cite 5 Restatement, Property, § 566, p. 3320 (1944), and also include a reference to Hayes v. Waverly & P.R. Co., supra. In that case complainants had coveyed a portion of their lands to Margaret Tammany subject to a covenant against use for any purpose "detrimental to the surrounding property of the party of the first part * * *." By mesne conveyances defendant railroad company acquired the Tammany title and proposed to erect an embankment and place a track on top of it. Complainants filed a bill to enjoin and the railroad company's demurrer to the bill was overruled. Chancellor McGill stated that under the doctrine of Tulk v. Moxhay, 2 Ph. 774; 11 B. 571 (1848), the railroad company had taken title subject to the restrictive covenant. As to the interest of the plaintiffs to be protected, he said:
"It is not for a moment questioned that the railroad company would be unable to enter upon the Tammany land without paying its value. When it purchased from the grantees of Tammany it found the land charged with a duty in favor of the complainants, the existence of which lessened, or should have lessened, the purchase price. The difference between that price and the real value is the consideration which the complainants have paid for their right in the Tammany land. The right thus bought is their property and must be paid for. I think they are entitled to have it protected in this court, for even if the stipulation from which it originates runs with *450 the land, the redress at law must be had through a multiplicity of suits, and therefore is inadequate." (51 N.J. Eq., at p. 351)
In re Board of Education of Borough of Leonia, 20 N.J. Super. 272 (Ch. Div. 1952), may appear to be contrary to Hayes. Property had been taken by eminent domain for use as a playground. The award made had been paid into court. At this stage of the proceeding the owners of property near the proposed playground sought to intervene in order to claim a portion of the award on the ground that the planned public use had deprived them of the benefit of a covenant for residential use only. Their application was denied, but on analysis I think the true ground of the denial was a decision that they never had any rights to enforce a restrictive covenant against the lands acquired by the board of education. Judge Grimshaw's opinion points out that the neighboring owner could not allege damage to their own plot as a basis for claiming part of the condemnation award, and for this he cited Herr v. Board of Education, 82 N.J.L. 610 (E. & A. 1911). It is true that the reversal in Herr was based upon the admission of evidence by the trial judge as to dimunition of value, allegedly caused by the public taking, to the neighboring property theretofore benefited by the restrictive covenant; yet the court pointed out with some emphasis that the board of education would have to pay full value for the land acquired, and if the neighboring owners had a property right in that land, they were proper parties to the condemnation proceeding.
In England the doctrine of Tulk v. Moxhay has developed to the point where there is apparently no question about the beneficiary of a negative covenant having an interest in the restricted land. Ashburner's Principles of Equity, (2d ed. 1933), pp. 368 and 369.
Though the Township of Berkeley Heights acquired its right of way by grant and not by eminent domain, if it were the established law of New Jersey that acquisition by eminent domain would not require payment of any share of *451 the award to the plaintiffs, then it would appear to follow that no equitable relief should be allowed against the township even though it did take by grant. It is for this reason that I have given considerable attention to the authorities dealing with condemnation of lands affected by restrictive covenants. On the basis of Hayes v. Waverly & P.R. Co., supra, supported to some extent by Herr v. Board of Education, supra, I have concluded that under our law plaintiffs have such an interest in the Tracy lot that they would be entitled to share in an award for the taking of that lot or any part of it for a public purpose conflicting with the restrictive covenants. In short, it appears to me that our law is consistent with, rather than contrary to, the views expressed in the foregoing quotation from the American Law of Property.
Plaintiffs are entitled to an injunction against any use of the Tracy lot as a right of way. The injunction should not bar the township from obtaining by purchase a release of plaintiffs' rights or from acquiring those rights by eminent domain, and the judgment may be worded accordingly.
It was also argued for the township that its ordinance relating to subdivisions contains a provision directing a developer to include in his submitted data "a copy of any protective covenants or deed restrictions applying to the land being subdivided * * *," and that the absence of such submission when this land was approved for subdivision should make the covenants unenforceable against the township. I see no merit in that argument. The covenants are in fact present as part of the record title.